IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| NICHOLAS ALSTON, Individually and on | : | CASE NO. _____ |
| Behalf of All Other Persons Similarly Situated | | |
| MONTGOMERY COUNTY JAIL | : | |
| 330 West Second Street | | |
| Dayton, OH 45422 | : | |
| | | |
| KEITH BARBER, Individually and on | : | |
| Behalf of All Other Persons Similarly Situated | | |
| MONTGOMERY COUNTY JAIL | : | |
| 330 West Second Street | | |
| Dayton, OH 45422 | : | |
| | | |
| Plaintiffs, | : | |
| | | |
| v. | : | |
| | | |
| PHIL PLUMMER, Individually and in his | : | <u>COMPLAINT</u> |
| Official Capacity as Sheriff of Montgomery | | |
| County, Ohio | : | |
| 345 West Second Street | | |
| Dayton, OH 45422 | : | |
| | | |
| Defendant. | : | |

_____

    1.  Plaintiffs, Jerome Walker, Nicholas Alston and Keith Barber, on behalf of themselves and all similarly situated individuals (collectively "Plaintiffs") bring this action against the Defendant, Phil Plummer, Sheriff of Montgomery County, Ohio.  Plaintiffs are inmates of the Montgomery County Jail (the "Jail").  They seek monetary, declaratory and equitable relief based on the Defendant's willful failure or deliberate indifference to constitutional, statutory and administrative mandates including but not limited to jail over-crowding, classification of

inmates, recreation and the imposition of punishment in the form of lock-downs in an arbitrary and capricious manner.

2.   This lawsuit presents claims pursuant to the First, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution; and Article I section 1 and Article I section 3 of the Ohio Constitution, vindication of which is brought pursuant to 42 U.S.C. Section 1983 and the court's pendent jurisdiction..

3.   Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343(3),(4), which provide for original jurisdiction of the Plaintiffs' claims arising under the laws of the United States and over actions to secure equitable and other relief.

4.   This Court's jurisdiction is also predicated upon 28 U.S.C. § 1367 as this class action complaint raises claims pursuant to the Constitution and laws of Ohio, over which this Court maintains supplemental/pendent subject matter jurisdiction.

5.   This lawsuit is presented as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure. The class consists of all prisoners housed at the Montgomery County Jail both new and old sides. Plaintiffs are unable to state the exact number of the class without discovery of Defendant's books and records, but avers on information and belief that the class is so numerous that joinder is not practicable. There are liability and damage questions of law and fact common to the class which predominate over any questions effecting individual members only. The claims or defenses of the representative parties are typical of the claims and defenses of the class, and the Plaintiffs will fairly and adequately protect the interests of the class. Additionally, prosecuting separate actions by or against individual class members would create a risk of inconsistent or varying adjudication with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class or adjudications with respect to individual class members that, as a practical matter, would be dispositive of the

interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests. Finally, the party opposing the class has acted or refused to act on grounds that apply generally to the class so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole or the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. (See Exhibit 1 attached hereto).

6.   Venue is proper in this forum pursuant to 28 U.S.C. § 1391 because the claims asserted arise in Montgomery County within the Southern District of Ohio and the Jail is located in that county and federal district.

7.   The Plaintiffs have exhausted such administrative remedies as are available to them with respect to the claims for relief asserted in this Complaint. They have complied with Section 42 U.S.C. 1997(e) of the Prison Litigation Reform Act.

8.   The Plaintiffs are inmates of the Jail, and the named Plaintiffs are suitable representatives of the proposed Plaintiff class.

9.   The Defendant, Phil Plummer, Sheriff of Montgomery County, Ohio, is a "person" under 42 U.S.C. § 1983 and was at all times relevant to this action employed by the Montgomery County Sheriff's Department and was responsible for supervising activities at the Jail.  He is sued in his individual and official capacities.

10. Pursuant to O.R.C. §341.01 the sheriff  "shall have charge of the county jail and all persons confined therein. He shall keep such persons safely, attend to the jail, and govern and regulate the jail according to the minimum standards for jails in Ohio promulgated by the department of rehabilitation and correction".

11. As it relates to the Montgomery County Jail, the Sheriff is the policymaker for

purposes of municipal liability and at all times relevant to this complaint acted under color of state law.

12. At all times relevant to this lawsuit the Defendants provided to each inmate of the Jail an Inmate Handbook (the "Handbook") which specifically defines the rights – as contrasted with the privileges – to which inmates of the Jail are entitled (See Exhibit 2 attached hereto).

13. In its introduction the Handbook confirms that the goal of the Jail "is to provide a safe and secure environment that promotes positive inmate behavior" and that the means for achieving that goal is "fair, impartial and humane treatment of all individuals incarcerated in the Jail."

14. The introduction to the Handbook further confirms that the Defendant's "responsibility is to ensure your basic needs are met, your basic rights are protected, your safety as well as the safety of our staff is maintained, and the needs of our community are met."

15. Section C1.1 of the Handbook defines inmate rights as "something to which you are entitled . . . protected by law and cannot be taken away from you . . .." Plaintiffs claim a liberty interest in the rights guaranteed to them by the Handbook.

16. Among the specific rights enumerated in Section C1.3 of the Handbook are:

- A clean and healthy environment.

- Protection from personal abuse, corporal punishment, personal injury, property damage or harassment.

- Reasonable visitation and telephone contact with your lawyer(s).

- Reasonable access to available legal materials.

- Adequate medical, dental and mental health care.

- Recreation outside of your living quarters, if you so desire.

17. Long-standing and continuing over-crowded conditions at the Jail have, in a variety

4

of ways, denied to the Plaintiffs basic rights to which they are entitled by constitutional and legal principles and by the express commitments made in the Handbook.

18. The over-crowding conditions have existed for at least two years. The jail inspection conducted by the State of Ohio determined that the jail capacity was 443 inmates. (See jail inspection report attached hereto as Exhibit 3).

19. An action plan was to be developed and submitted by the Montgomery County Sheriff  to cure the over-crowding conditions. That plan was ineffective.

20. The over-crowding continued to at least the early part of July, 2018 as demonstrated by the population reports attached hereto as Exhibits 4, 5, 6 and 7 .

21. The stated purpose of the State's recommended housing capacity standard is to ensure that staff and inmates are safe.

22. As demonstrated by Exhibit 3 attached hereto, the Jail housed Seven Hundred Ninety One (791) inmates during its November 2016 State inspection.

23. Since that time the Jail has continued on a daily basis to house inmates in numbers that exceeded accepted safety standards.

24. By the summer of 2018 the daily inmate population at the Jail was in the range of Eight Hundred Thirty (830) individuals.

25. The over-crowding became so pronounced that the "Justice Committee for the Montgomery County Jail" was formed pursuant to Res. 17-0530 "to serve as an Advisory Committee to the Montgomery County Commissioners and Montgomery County Sheriff's Office". The inmate population was unaffected by the committee formation.

26. The Sheriff is a member of the Advisory Committee. Before joining the Committee he knew or should have known about the conditions of the Montgomery County Jail which by statute, he is charged with operating.

5

27. The Advisory Committee hired CGL Companies at a cost in excess of $100,000.00 to perform a study of the Montgomery County Jail.

28. The consulting group reported to the Advisory group in mid-July, 2018. The consultants reported that at the same time that funding and staffing at the jail have decreased, populations have increased. The jail now operates at a higher capacity than it was built to house. "Pods designed to house 48 inmates now house 104. Areas designated for activities have been converted to housing". Banner headlines in the Dayton Daily News on July 19, 2018, pronounced "County Jail told to fix serious staffing, overcrowding issues". (See Exhibit 8 attached).

29. Settlements of Montgomery County Jail inmates' complaints exceeded 1 million dollars in 2017.

30. Over-crowding has produced situations where extra sleeping platforms have been crammed into existing cells and where, in many instances, inmates have been required to sleep on the floor.

31. The Jail was designed with the placement of individual cells in Pods or units where during daytime hours inmates were free to socialize and engage in meaningful and positive interpersonal relationships. They were free to associate and assemble pursuant to their constitutional rights. Indeed the Inmate Handbook indicates that the "Pod cells are opened at approximately 5:30 a.m. and remain open until approximately 11:00 p.m. except during meals and counts". The hours of opening and closing may be adjusted but only for "your [inmate] safety or security reason"

32. As a result of safety concerns arising from over-crowding it has become standard practice to have inmates in Pods locked into their separate cells at all times for up to twenty-two (22) or twenty-three (23) hours a day. This practice has transformed the Pods, whose uniqueness

6

allowed the inmates freedom of movement, recreation, hygiene, assemblage and association and access to the phones and hence attorneys, into a virtual solitary-confinement situation.

33. Upon information and belief the correction officers in charge of the Pod, typically one for the 100 plus inmates in the Pod, use the lockdown as a form of discipline, and apply it arbitrarily and capriciously to the entire Pod, locking more than 100 inmates down for the violation of one inmate, thereby depriving all innocent inmates of their rights. Even when an inmate was absent from the Pod and in class, he was subjected to the arbitrary and capricious discipline, upon returning to the Pod.

34. Such lock-down practices deprive inmates in affected Pods of adequate opportunities for telephone communications, exercise, showers, and other activities, including communications with attorneys and securing of resources to enable posting of bonds.

35. These problems are exacerbated by the facts that each Pod contains at least one hundred four (104) inmates and that it is impracticable, if not impossible, to accommodate the needs of that many individuals in the hour or two that a pod is not in a lock-down state.

36. It is a common practice at the Jail to mix inmates charged with minor offenses with violent offenders and other inmates afflicted with serious mental health problems. As a result, safety risks attendant on incarceration are unreasonably exacerbated.

37. Upon information and belief, an inmate being held on a petty theft charge from Miamisburg Municipal Court, simply awaiting an assessment for treatment, was housed in the same Pod as an inmate facing a felony of the first degree. The misdemeanant had been housed 50 days without the assessment having been performed.

38. "Sick inmates" believed to be those inmates who were on drugs at the time of arrest and experiencing the aftereffects of withdraw while incarcerated, were subjected to physical violence when their conduct disrespected other inmates.

7

39. It has been reported that an inmate who suffered a swollen jaw, reported the medical condition on a Thursday, but was not treated until the following Monday, all the while the jaw swelled and the inmate experienced unnecessary pain and suffering.

40. A significant percentage of the overall inmate population at the Jail is composed of individuals who, because of insufficient funds, are unable to post bond for minor offenses, mixed with inmates who are charged with felony offenses, some of which are first degree felonies, sentenced inmates awaiting assessments and/or transportation, and inmates charged with sex offenses. Based on data analysis, and the assessment of other published reports, the county's pretrial programs demonstrate the ability to improve pretrial outcomes, but is limited in its reach to only those charged with a felony or violent misdemeanor, leaving hundreds in jail awaiting appearance at any given time, while occupying law enforcement, including the Montgomery County Sheriff with elevated levels of recidivism and failure to appear. These pretrial detainees, awaiting appearances are mixed within the general population of the jail since over-crowding impacts classification.

41. Although Classification is set forth in the handbook and to be based on six criteria: a) Your behavior and attitude toward staff and other inmates; b) Your needs; c) Your current and past charges; d) Your level of security risk; e) Jail needs; f) Your behavior during previous periods of confinement. Investigation disclosed that a petty theft inmate who are post-plea awaiting assessment was housed with a pre-trial first degree felony offender. Over-crowding at the jail defeats the classification system established in the handbook.

42. All class members are at risk of harm due to the following policies and practices, each of which relates in whole or in part to the over-crowded conditions which have been created, permitted and maintained by the Defendant at the Jail he is statutorily charged with operating:

(a) Denial of a clean and healthy environment.

8

(b) Failure to adequately supervise and classify inmates to ensure that they do not face an unreasonable risk of injury and violence from other incarcerated individuals.

(c) Use of force that subjects inmates to serious injury or the risk of serious injury even when such force is unnecessary to control behavior or maintain order in the Jail.

(d) Denial of adequate medical, dental and mental health care.

(e) Deprivation of reasonable visitation and telephone usage.

(f) Deprivation of reasonable telephone contact with lawyers and access to available legal materials.

(g) Deprivation of reasonable recreation.

(h) Impact on the density of inmate population by incarceration of inmates charged with minor offenses who are financially unable to afford bail bonds.

43. Attached to this Complaint as Exhibit 9 and incorporated by reference is the now expired Final Consent Decree entered by this Court on September 14, 1989 in a class action filed as Case No. C-3-89-036 as a means of addressing issues of over-crowding similar to those currently being experienced by the Plaintiffs.

44. Pursuant to R.C. 341.04 "the sheriff shall visit the county jail and examine the condition of each prisoner, at least once during each month". Thus the Sheriff, by his monthly visits, was actually aware of the unconstitutional conditions in which the inmates are confined and failed to remedy those conditions or was deliberately indifferent to those conditions. Additionally the Sheriff was put on actual notice of the overcrowding conditions by the 2016 State Jail Inspection report, which resulted in the request from the State of Ohio to provide an action plan to remedy the deficiencies found by the jail inspector. Defendant was actually aware

9

that settlements to inmates exceeded 1 million dollars in 2017. Defendant was actually aware an Advisory Committee had to be formed by the County Commissioners to advise them on the running of the Montgomery County Jail, and that a contract in excess of $100,000.00 was authorized to study the jail. Defendant was aware the first report to the Advisory Committee, a member of which is the Defendant Montgomery County Sheriff, detailed the deficiencies and was reported under the banner headline in the local paper:"County jail told to fix serious staffing, overcrowding issues", (See Exhibit 8 attached) the same admonition the State Jail Inspector informed the Sheriff of, as a result of the 2016 jail inspection and request for action plan to remedy the condition(s).

## FIRST CLAIM FOR RELIEF

45.     The Plaintiffs repeat the allegations contained in Paragraphs 1 through 44 of this Complaint as if fully rewritten herein and say that the over-crowded condition of the Jail and the policies and practices resulting from that condition subject the individual Plaintiffs and the class they represent to substantial risks of serious harm and injury from inadequate health care, violence between prisoners, and excessive force and has violated their right to basic human dignity  and to be free from unconstitutional conditions under the Fourteenth Amendment to the United States Constitution.   Those policies and practices have been and continue to be implemented by the Defendant and all persons acting in concert under color of state law, in their official capacity, and are the proximate cause of the ongoing deprivation to the individual Plaintiffs and the class they represent of rights secured under the Fourteenth Amendment.

46.     The Defendant has been and is aware of all of the deprivations complained of herein, and he has condoned or been deliberately indifferent to such conduct.  It should be obvious to the Defendant, and to any reasonable person, that the conditions imposed on class

members for many months or years cause tremendous mental anguish, suffering, and pain to such individuals. Moreover, the Defendant has repeatedly been made aware, through administrative grievances and written complaints, monthly visits statutorily mandated, and state inspections, that class members are currently experiencing or are at risk of significant and lasting injury.

47.     The Plaintiffs have no adequate remedy at law for such violations.

## SECOND CLAIM FOR RELIEF

48.     The Plaintiffs repeat the allegations contained in Paragraphs 1 through 47 of this Complaint as if fully rewritten herein and say that by the policies and practices described herein the Defendants have subjected the individual Plaintiffs and the class they represent to a substantial risk of serious harm and injury from inadequate health care, violence between prisoners, and excessive force and have violated their right to be free from cruel and unusual punishment under the Eighth Amendment to the United States Constitution as that right is applied to inmates who have been sentenced, but await transportation, assessments, transfer to other institutions all of whom are housed in the general population with pretrial detainees who have substantially greater rights as they are presumed innocent. These policies and practices have been and continue to be implemented by the Defendant and all persons acting in concert under color of state law, in their official capacity, and are the proximate cause of ongoing deprivations of rights secured under the Eighth Amendment to the individual Plaintiffs and the class they represent.

49.     The Defendant has been and is aware of all of the deprivations complained of herein, and he has condoned or been deliberately indifferent to such conduct. It should be obvious to the Defendant and to any reasonable person that the conditions imposed upon class

11

members for many months or years cause tremendous mental anguish, suffering, and pain to such individuals.    Moreover the Defendant has repeatedly been made aware, through administrative grievances and written complaints, monthly visits statutorily mandated, state inspections, that class members are currently experiencing or are at risk of significant and lasting injury.

50.    The Plaintiffs have no adequate remedy at law for such violations.

**WHEREFORE,** the Plaintiffs ask the Court to order the following relief:

A.  That this lawsuit be certified under Rule 23 of the Federal Rules of Civil Procedure as a Class Action on behalf of present and future inmates of the Montgomery County Jail.

B.  That injunctive relief be granted the Plaintiffs enjoining the Defendant from operating the Montgomery County Jail in violation of the minimum standards for full service jails in the State of Ohio, including maintaining population at or below the maximum permitted population based on the jail standards minimum square footage;

C.  That a declaratory judgment be entered confirming that the Defendant has violated Constitutional and legal mandates by existing practices with respect to over-crowding at the Montgomery County Jail.

D.  That a declaratory judgment be entered confirming that the Defendant has violated Constitutional and legal mandates by existing practices with respect to classification of inmates.

E.  That a declaratory judgment be entered confirming that the Defendant has violated Constitutional and legal mandates by existing practices with respect to the non-release of inmates who represent no significant risk to society or in need for confinement.

F. An award of damages, costs and reasonable attorney fees to Plaintiffs and their counsel in an amount to be determined by the Court and for all other relief to which this court determines the Plaintiffs entitled.

/s/ Lawrence J. Greger
Lawrence J. Greger (0002592)
GREGER LAW OFFICE
120 West Second Street, Suite 1100
Dayton, OH 45402-1657
PHONE:         (937) 223-3153
FAX:              (937) 223-3008
E-MAIL:         larry@gregerlawoffice.com


/s/ Anthony R. Cicero
Anthony R. Cicero (0065408)
CICERO ADAMS, LLC
500 East Fifth Street
Dayton, OH 45402-2914
PHONE:         (937) 424-5390
FAX:              (937) 424-5393
E-MAIL:         tonycicero@gocicero.com


/s/ David C. Greer
David C. Greer (0009090)
BIESER, GREER & LANDIS, LLP
6 North Main Street, Suite 400
Dayton, OH 45402-1908
PHONE:         (937) 223-3277
FAX:              (937) 223-6339
E-MAIL:         dcg@biesergreer.com


/s/ Ellis Jacobs
Ellis Jacobs (0017435)
ADVOCATES FOR BASIC LEGAL EQUALITY
130 West Second Street, Suite 700-E
Dayton, OH 45402-1501
PHONE:         (937) 535-4419
FAX:              (937) 535-4600
E-MAIL:         ejacobs@ablelaw.org

/s/ Anthony S. VanNoy_____
Anthony S. VanNoy (0067052)
ANTHONY S. VanNOY, INC.
130 West Second Street, Suite 1624
Dayton, OH 45402-1502
PHONE:        (937) 952-5043
FAX:          (937) 496-5393
E-MAIL:       avannoy@thevannoyfirm.com