**EXHIBIT**

1

Dear Judge Rice,

We the inmates at the Montgomery County Jail feel that we need to bring some issue's to your attention sir.

We feel that our Constitutional Rights are being violated by Cruel and Unusual Punishment. The cruel is always being threaten with bodily harm by Correctional officer, i.e, C.O Leary, C.O occonet. Being approached by C.Os as if they are our Judge, Jury and Exationer. The C.Os feels that as long as they have control over us inmates that they can begin our punishment before we have been convicted. The Unusual is that we are under arrest due to not being able to communicate with our legal advisors on the telephone due to the fact that we are not release from our cells until the C.O. feels fit to release us, and our attorney are not in there office. We are allowed one to two hours a day to be released from our cells to excercise, shower, watch News or talk on the telephone. There is minimum amount of phones to allow 104 inmate to use at one time. We also are having difficulty contacting people to post bonds because the isn't enough time to Network. Some of us have Bi-Polar and manic Deppression and having such disorder its sometimes its is hard as fighting the slide as hard as

It's fighting the climb, and being locked down its dangerous by itself, with out the proper medication and dosage it could be extremly hurtful to the inmate and dangerous to the other inmates and staff. Being isolated with this disorder can and will elevated to a more serious mental issues in the future. Now the Punishment is that we are locked down 22 to 23 hours a day like were in maximum security status. Some of us are here on Traffic Violation, child support, fines, and other non-violent offense's. Some of us has never been incarcerated ever, but we are locked up with violent offenders, Domestic violence, Assaults, Robbery, etc. and we have the same classifactions as them. Most of us haven't been convicted but we are housed with these violent offenders. We also have to endure the same treatment as them as we are being detained. We feel that the Montgomery County Jail should put more consideration in the classification and place new Regulations for the C.O.'s to have more consistence Rules, Etics, behaviors, Respect. Most of us are here to be detained till we can stand before our Judge and be Ruled upon. We are not Guilty until our Judge Rules we are Guilty. No C.O. or Deputy can dictate what a Judge is going to do and we feel that is what is going on in the

inside of Montgomery County Jail. We
the inmates has the Right to a fair
Trial and a jury of our peers, we feel that
that Right is being Violated because we
are being punished before our verdict.

We the Inmates in A, C, D pod are locked
down 22 hours a day and according to the Rules
Issued of our Montgomery County Jail Inmate
Rule book states that "Pod Cells are opened
at approximately 5:30am and Remain open
until approximately 11:00 pm. It also states "For
Safty and security reasons the floor officer may
~~find it necessary~~ to adjust these hours at there
~~discretion~~ Some of us have been here for
over six months and not once has our Pod been
open from 5:30 to 11:00. There hasn't been
one major security Risk and all the Pod officers
feel it more convient to keep us locked down
so it would ~~decrease their~~ responsibities.

There is 104 inmates in each of the Pods
and we have one hour to exercise, shower, call
Attorneys, family, friends, watch news. It is ludicrest
to even attempt it there is nine phones and most
of the time three or more are broken so the
Ratio of Inmates per phone decreases. So the
point is that it is very difficult to accomplish
anything with the time allowed.

We the Inmates also feel that there

are discrimination issues. There are those with Sexual preferences. The Montgomery County Jail states that some of them has Gender issues which is completely false. they can not house and keep separated from other inmates soley because he's gay, unless a major rule was violated which it has not. that is Discrimination. Now $CO's$ will repus on inmates based on their color. $C.O.$ Sullivan. He placed a white inmate in D-Pod and a black inmate in S.2.1. with murders Rapist, violent offenders, this inmate was those to maximum status by Sullivan and the inmates was injuried by such murders Rapist and now has suit on County Jail for discrimanation. such Black inmate was their soley for child Support.

We the inmates also see that the Bonds that is imposes on us is extremly unreasonable. They Post $10-$20 thousand dollar bonds on minor Case. who has that kind of money. Imposing that kind of bond on us Causes us and our entire family hardship We haven't been Found Guilty of anything. It Causes us to lose our Jobs, It make it tho we are Inable to afford Proper representation without Proper Representation it makes it difficult to have a fair and Just hearing. there was

a case last year, where there was a man arrested and a high Bond was placed on him. He had to stay in jail for two year fighting this case, meanwhile he lost his Kids, his job, his home and the respect from the community. After two year they found out it wasn't him that Robbed the store. If his bond was reasonable he could have saved all the things that he had lost.

Your Honor we are not a Communist Country, we are the land of the FREE. We still have Rights as United States Citizen and human Race. We feel that we are treated unfairly and unjust. We Respectfully ask this Honorable Court to take into Consideration our Request and adjudicate or Modify the Issues above. Thank You,

Submitted By
Jerome Walker
Jerome L Walker

Revised By
Derek A Costa
Derek A Costa
228 Deed Ave
Dayton Ohio
45404
937-313-9301

Denis Costa JR
208 W. 2nd St
Dayton Ohio 45422

COLUMBUS
OH COLUMBUS OH 431
26 JUN '18
PM 26 JUN 2018 PM 2 L FOREVER USA

Barn Swallow

Federal Building

Magistrate Judge Rice

Dayton Ohio

45402

45402181245

A Petition for Montgomery
County Jail Inmates Rights.
Food, Rec., Treatment On Ese.

Band Num.

1. Jerome Walker          180-9330
2. Nicholas Alston        1807226
3. W. Washington          180 9301
4. Brian Cameron          1808624
5. Brian Darington        1722914
6. Christopher Roch       1808981
7. Floyd

8. [signature] 1808686
9. [signature] 180 7??

10. GASKINS    160531
11. Lewis Johnson    160?155
12. Michael Brown    180904
13. Keith Barber    180623?
14. Davion Blair    18-085 70
15. Timothy Jones    180946
14. Derek Costa [signature] 180205?

Montgomery County Jail

# INMATE HANDBOOK

| Table of Contents | Page # |
|---|---|

A. Introduction — 1

B. Mission Statement — 2

C. Rights and Responsibilities — 2
    C1. Inmate Rights
    C2. Expected Inmate Behavior
    C3. Jail Management

D. Legal Counsel/Bail — 3
    D1. Court
    D2. Legal Counsel
    D3. Consular Officials and Department of Homeland Security
    D4. Bail/Bonds

E. Classification — 5

F. Housing — 6
    F1. Housing Unit Schedules
    F2. Permitted Items
    F3. Smoking Policy
    F4. Daily Cleaning

G. Inmate Property/Clothing — 9
    G1. Property and clothing storage
    G2. Inmate Clothing

H. Communication — 10
    H1. Incoming Mail
    H2. Outgoing Mail
    H3. Cell Intercom Call Buttons
    H4. Telephone Calls
    H5. Visiting
    H6. Media Contact

I. General Services — 15
    I1. Meals
    I2. Personal Hygiene
    I3. Commissary
    I4. Money
    I5. Haircuts
    I6. Armbands

J. Inmate Programs
    J1. Religious Services
    J2. Recreation
    J3. Library Services
    J4. Interpreter Services
    J5. Education/Substance Abuse/Cour
    J6. Inmate Worker Programs

in a temporary holding cell, you are
ate Handbook rules. You may not have
in the courtroom; including family members,
friends. Gestures of any kind are prohibited.
nitted to communicate with other inmates.
ays possible. Any inappropriate behavior may be
plinary rules, sanctions, and procedures.

3

EXHIBIT

2

tabbies

K. Health .......... 20
  K1. Medical Services and Medications
  K2. Dental
  K3. Mental Health

L. Security and Safety .......... 24
  L1. Lockdown and Safety
  L2. Counts
  L3. Contraband
  L4. Security Inspections
  L5. Searches
  L6. Movement
  L7. Use of Force
  L8. Fire Safety and Emergency Evacuation
  L9. Sexual Assault, Misconduct, or Harassment

M. Rules, Discipline, and Grievances .......... 27
  M1. Rules, Violations and Sanctions
  M2. Due Process (Disciplinary Hearings)
  M3. Complaints
  M4. Grievances
  M5. Pod Rules

## A. INTRODUCTION

The primary goal of the Montgomery County Jail is to provide a safe and secure environment that promotes positive inmate behavior. Through fair, impartial and humane treatment of all individuals incarcerated in the jail, this goal is realized.

The operation of the Montgomery County Jail is guided by the "Direct Supervision" concepts of correctional facility management. Through these concepts, the jail structures the environment to provide a positive behavior management system to meet critical needs.

The Sheriff has charge of the Montgomery County Jail and has appointed a Jail Administrator who is responsible for the daily operations of the facility.

The operation of the jail is governed by the laws of the State of Ohio, standards set forth by the Ohio Department of Rehabilitation and Corrections, and the rules and regulations established by the Sheriff.

Our responsibility is to ensure your basic needs are met, your basic rights are protected, your safety as well as the safety of our staff is maintained, and the needs of our community are met.

The jail staff believes your behavior will be positive, cooperative and rational. During your stay, you are responsible for following all rules and regulations of the jail, the directions, and instructions of all staff members.

Some of the regulations may seem too restrictive to you; however, they are necessary to ensure a safe, secure and consistent environment. Your cooperative behavior will preserve your privileges. Negative choices will result in loss of privileges, disciplinary sanctions (or penalties), and possibly criminal charges.

This handbook is your guide to the operation of the jail and to our expectations of you. Read this handbook thoroughly, because you are expected to know and follow the rules and regulations contained in it. If you do not understand something, ask your housing unit officer for help. Maintain this handbook in good condition during your stay at the Montgomery County Jail. Do not write in or on it.

Changes in procedures, rules or regulations occur in an effort to better the jail and its operation. These changes benefit you as well as the staff. You should expect change and be prepared to accept it. You will be notified of any significant change as soon as possible.

THIS HANDBOOK IS PROPERTY OF THE MONTGOMERY COUNTY SHERIFF'S OFFICE. IT MUST BE RETURNED TO ANY JAIL STAFF MEMBER UPON REQUEST, OR TO THE HOUSING UNIT OFFICER AT THE TIME OF RELEASE FROM THE FACILITY.

...hent, a courtroom, or in a temporary holding cell, you are
...pliance with the inmate Handbook rules. You may not have
...tact with spectators in the courtroom, including family members,
...family members or friends. Gestures of any kind are prohibited.
...n, you are not permitted to communicate with other inmates.
...endants is not always possible. Any inappropriate behavior may be
...ance with jail disciplinary rules, sanctions, and procedures.

...gnment may be held in the jail video courtroom.
...n video arraignment, a judge will advise you of your pending

## B. MISSION STATEMENT

It is the mission of the Montgomery County Jail to protect and serve the citizens of Montgomery County by providing for the care, custody and control of legally incarcerated pre-trial detainees in a safe and secure environment. The jail recognizes the importance of delivering basic human services and strives to provide those detained with an opportunity for positive growth and change. It is the intent of the jail to accomplish these goals fairly and equally in the most cost effective manner possible. Furthermore, the jail believes that a professional, trained staff holds the key to an effective detention operation and ensures the development of a progressive organization.

## C. RIGHTS AND RESPONSIBILITIES

### C1. Inmate Rights

1. A right is something to which you are entitled, generally determined by law. Your rights are protected by law and cannot be taken away from you, however, it may become necessary to modify your rights to ensure the rights of all inmates and the safety and security of the jail.

2. A privilege is something that is granted as a benefit, generally as a result of positive behavior. The jail staff may take away privileges, generally as a result of negative behavior.

3. You have the right to:

   - Adequate nutrition in accordance with established standards.
   - Adequate medical, dental and mental health care.
   - Reasonable visitation and telephone contact with your lawyer(s).
   - Reasonable access to available legal materials.
   - Mail correspondence with all persons and agencies; mail is inspected, but not censored.
   - Freedom of religious affiliations and voluntary worship.
   - A clean and healthy environment.
   - Recreation outside of your living quarters, if you so desire.
   - Information on rules, regulations, procedures and schedules that directly affect you.
   - Freedom from discrimination based on race, religion, national origin, sex, handicap or political beliefs.
   - Protection from personal abuse, corporal punishment, personal injury, property damage or harassment.

4. All services and activities not listed as rights are inmate privileges.

### C2. Expected Inmate Behavior

1. Y~ ~conf~ ~ ~mery County Jail offers you a series of choices. respect and accomplishment, or negative rivileges.

   re; Direction, Consistency and
   by it, and you can discover
   consequences inevitably follow

   ~ur rights and treating you
   you will:

---

   - Follow all rules and regulations
   - Follow all staff directives and requests (If you disagree, follow the request anyway, and then ask to see a supervisor to discuss your disagreement.)
   - Respect jail property and the personal property of others
   - Maintain your assigned cell and surrounding common area in a clean and orderly way
   - Maintain daily personal hygiene
   - Not use loud, abusive or obscene language or threatening gestures toward any other person in the jail
   - Respect the privacy of others
   - Communicate your needs

### C3. Jail Management

1. The jail is managed and controlled by the Sheriff and his staff.

2. No inmate has the right or authority to assign work of any kind to any other inmate, nor to have control over any other inmate. Kangaroo courts, sanitary courts, and any other inmate organizations are forbidden.

3. [text obscured]

4. You are to conduct yourself in a respectful manner to all corrections officers and staff members. Address all staff by their title and last name, if you don't know their name, ask and try to remember it. The staff will use and remember your name.

5. Yelling and/or whistling from any outdoor recreation area is not permitted and will result in recreation being terminated.

## D. LEGAL COUNSEL / BAIL

### D1. Court

1. You will be transported to court as deemed necessary by the courts. The housing officer informs you if you are scheduled for court.

2. You are permitted to bring legal materials only pertaining to the case to court. You need to inform the jail staff if you have any law materials you are taking to court. You may not bring pencils, pens, combs, candy, or any other items with you to court.

3. You are not permitted to wear extra clothing when you are escorted to court (extra shirt(s), pants, additional pairs of socks, etc.) You may be subject to disciplinary procedures if you are found to have additional clothing on while being transported from or to the facility.

4. Your initial court appearance/arraignment may be held in the jail video courtroom. During your appearance in video arraignment, a judge will advise you of your pending charges.

5. While in video arraignment, a courtroom, or in a temporary holding cell, you are expected to be in compliance with the Inmate Handbook rules. You may not have verbal or physical contact with spectators in the courtroom, including family members, friends, or the victims' family members or friends. Gestures of any kind are prohibited. While in the courtroom, you are not permitted to communicate with other inmates. Separation of co-defendants is not always possible. Any inappropriate behavior may be dealt with in accordance with jail disciplinary rules, sanctions, and procedures.

6. The Montgomery County Sheriff's Office will not escort you to court appearances that are not for Montgomery County's jurisdiction. If you have other court cases or proceedings in other jurisdictions, it is your responsibility to make arrangements and take the appropriate steps with that jurisdiction to ensure your appearance. You may write a letter, or have family/friends, or your attorney contact the jurisdiction's clerk of courts or prosecutor's office to make arrangements.

7. Pretrial Services may request your cooperation with an interview. The interview is to determine whether you are eligible for release under the supervision of Pretrial Services. If you refuse to be interviewed, you will not qualify for pretrial release and your bond will be set accordingly. The interview will be used to gather current information about you in order to make a bond recommendation to the judge. Some questions you will be asked are:

- What is current address and phone number?
- What family ties do you have to the area?
- Are you employed?
- Provide two (2) people who can verify your information.

When you are asked by the corrections officer to report to the Pretrial Services camera for your interview, please do so in order for Pretrial Services to determine if you are eligible for release.

## D2. Legal Counsel

1. You have the right to legal counsel regardless of your status or charge. If you cannot arrange for the services of an attorney on your own, the court normally arranges for a public defender or attorney to represent you, usually through a screening process. The attorney will contact you after the court instructs them to do so.

2. Attorney visits may occur as needed, usually between 8:00 a.m. and 10:00 p.m., in the visitation rooms near your housing unit.

## D3. Consular and Department of Homeland Security

1. Inmates who are foreign nationals and would like to contact a consular official or the Department of Homeland Security can make this request to their housing officer verbally or by completing a jail request form. Employees will assist you in making contact with appropriate officials.

## D4. Bail/Bonds

1. Your housing unit officer or attorney can answer your questions about how, when or if you can post bail.

2. A bond is your commitment to appear in court until a final disposition has been reached in your case. If you miss any court appearances before your case has reached a final disposition, a Failure to Appear (FTA) warrant may be issued for your arrest from the courts. This is normally the case for every bond type. There are different types of bonds that have differing requirements to be valid. Below are examples of the more common bonds.

- **Personal Recognizance (PR) Bond** – Requires your signature. There is a dollar amount on the bond the courts would hold you liable for if you miss any court appearances.

- **Cash Bond** – Requires a specific dollar amount. If the money does not come from your personal inmate account, the person who brings the money for the bond has the option of specifying whether the money may only be returned to them or if it may be returned to you at the end of the case. If you miss any court appearances, the money is forfeited to the courts, in addition to the FTA warrant. You need to be aware the forfeited bond money normally does not resolve your case and a warrant may still be issued for your arrest.

- **Property Bond** – Requires real estate or stocks. To post a property bond you must begin the process with the court clerk to know what is specifically required. There are several steps to verify real estate value, amount owed, etc. If you miss any court appearances, a lien is placed against the property for the specific amount on the bond until that amount is paid to the courts, in addition to the FTA warrant.

3. This is basic information regarding bonds; there may be additional conditions, set forth by the court, on your bond.

## E: CLASSIFICATION

1. Classification is the process which determines the housing unit you are assigned to while at the Montgomery County Jail. The classification officer evaluates the following:

- Your behavior and attitude toward staff and other inmates
- Your needs
- Your current and past charges
- Your level of security risk
- Jail needs
- Your behavior during previous periods of confinement

Inmates are never classified in order to segregate based on race, color, creed, religion, or national origin.

2. You may request a change in your classification by completing a Jail Request Form. You must explain the reason for the change. The classification officer will consider the request.

3. If at any time you feel threatened or concerned for your safety, talk to your housing unit officer right away. Inmates with verifiable concerns about their welfare may be moved to another housing unit. For your protection, do not discuss your charges with other inmates.

4. If you are a threat to others or are in danger from others, your classification may be changed, and you may be moved to Administrative Segregation Housing.

5. You may be placed on keep separate status when requested by facility staff, a law enforcement agency or your actions with others.

6. You are given privileges according to your classification status.

7. The classification officer can move you anywhere within the facility. You may appeal a classification change by requesting and completing a Jail Request Form.

8. Your classification status will be re-assessed on the 30th day of your confinement and every 6 months thereafter. Your behavior, participation and completion of programs, compliance with others, and ability to function with other inmates will affect your classification status.

## F. HOUSING

### F1. Housing Unit Schedules

1. **Dormitories**

   Dormitory cells with day/night sides are opened at approximately 5:30 a.m. and remain open until approximately 11:00 p.m., except during meals and counts. For your safety or for security reasons, the housing unit officer may find it necessary to adjust these hours, at their discretion.

2. **Ranges**

   Individual range cells are opened at approximately 5:30 a.m. and remain open until approximately 11:00 p.m., except during meals and counts. For your safety or for security reasons, the housing unit officer may find it necessary to adjust these hours, at their discretion.

3. **Administrative Segregation**

   a. If you are housed in Administrative Segregation, you are locked in your cell at all times, except for one hour a day when you are given access to the shower area and/or to the telephone.

   b. You are permitted to shower daily.

   c. You are permitted at least one (1) telephone call weekly (for inmates in a non-telephone accessible area) unless you are on a restriction, which may include loss of this privilege.

   d. Inmates housed in Administrative Segregation receive all rights and privileges unless they pose a serious threat to the security of the jail or to the health and welfare of themselves or others. Privileges will be taken away as a result of negative behavior.

4. **Disciplinary Housing**

   a. Inmates placed in a Disciplinary Housing unit (not isolation) are on restriction from all recreational activities, program participation, non-professional visits, contact with friends and family via telephone, and non-hygiene commissary items.

   b. If an inmate's rule violations warrant, he/she can be placed on restriction from clothing, bedding, and unlimited access to toilet, lavatory, and showers.

   c. Inmates in Disciplinary Housing will have access to their attorney, clergy members, medical care, adequate light, ventilation, temperature, sanitation, and a nutritional diet.

   d. The maximum penalty for rule violations resulting from one incident will be no more than 60 days. Continuing in disruptive behavior will result in additional restrictions.

5. **Single Cells**

   a. Single cells (one or two-man cells) that have a common area are opened at approximately 5:30 a.m. and remain open until approximately 11:00 p.m., except during meals and counts. For safety and security reasons, the floor officer may find it necessary to adjust these hours at their discretion.

   b. If you are assigned to a single cell (one or two-man cell) you are given an opportunity to shower daily. Showers are normally allowed during the evening.

   c. If you are in a single cell that does not have a telephone, you are given access to a phone daily.

6. **Pod Housing Units**

   Pod cells are opened at approximately 5:30 a.m. and remain open until approximately 11:00 p.m., except during meals and counts. For your safety or for security reason, the pod officer may find it necessary to adjust these hours at his discretion.

7. **Direct Supervision Units**

   You are to remain on your bunk from 11:00 p.m. until 5:30 a.m. or at anytime the housing officer directs you to report to your bunks.

### F2. Permitted Items

1. You are permitted to have the following jail-issued items:

   • Two (2) sheets
   • One (1) blanket
   • One (1) towel
   • One (1) mattress
   • One (1) uniform consists of pants and shirt
   • One (1) pair of tissue sandals
   • Two (2) bars of soap
   • One (1) tooth brush
   • One (1) inmate handbook

2. You are permitted to have the following non-issued items:

   • Two (2) sets of plain white T-shirts, which must be without any pictures, logos or printing
   • Two (2) pair of undergarments, including bras (no underwire) for female inmates
   • Two (2) pair of socks any color
   • Legal papers and/or your personal legal reference books
   • Personal letters
   • Two (2) books from the jail library at any one time
   • One (1) Bible and/or prayer book
   • Photographs (not permitted to be hung on the walls or bars) See *Incoming Mail*
   • Items on the commissary list in moderate quantities (no more than a total of $100 worth of items), providing the items have not been altered in any manner

- Leisure time games and equipment purchased from Commissary.
- Feminine hygiene items (females only)
- Shaving razors, and/or nail clippers during authorized shaving periods only
- Medical and/or health care items issued or approved by the jail physician or health care staff.
- Medical Alert Tag

3. You may possess some special items and equipment authorized by the health care staff or the jail staff. The jail staff has a written record of your authorization to possess any item not on the list of permitted items.

4. Any item altered from its intended use, modified in any way, or not on the list of permitted items may be confiscated by jail staff and considered contraband.

**F3. Smoking Policy**

1. Smoking is not permitted within the Montgomery County Jail in order to help maintain a safe, healthy and clean environment for inmates, staff members and citizens.

2. Inmates who are temporarily outside the jail building are prohibited from using tobacco products at any time.

3. Inmate workers on outside work details are not permitted to use tobacco products at any time.

**F4. Daily Cleaning**

1. You are required to participate in the daily housekeeping of your housing unit or cell. After each meal service, jail staff issues the necessary supplies and equipment needed for cleaning and will monitor your work.

2. The housing unit officer inspects your housing unit and cell area at least 3 times daily. You and other inmates assigned to the housing unit maintain regular telephone and television privileges by keeping the housing unit clean. Special privileges may be given to the best-maintained units. On the other hand, your unit may lose privileges if you choose not to follow cleaning requirements.

3. Cleaning includes but is not limited to:

a. Floors swept, mopped, free of paper and trash

b. Walls, tables, benches, empty bunks, and bars, where applicable, wiped clean. Bars must be kept free of all items except outgoing mail and jail forms.

c. Toilets, sinks (drinking facilities), and showers cleaned

d. Storage boxes stored under bunks or under your desk.

e. Your bunk is to be made each morning by 5:30 a.m. and remain made until 9:00 p.m. You are permitted to lie down or sit on the bunk but not under the covers during this period.

4. You are expected to store your personal items on a shelf or a desk. You may buy a storage box from the commissary.

---

5. Unless you have medical authorization, you are not permitted to take bedding (sheets, blanket, mattress, or pillow) into the day area of the pod, dormitory or range.

6. Do not throw trash in the toilet or on the floor. Put it in the proper trash containers.

7. You may not hang any items from the bunks. You may not cover light fixtures, windows, or vents with any item. All items are to be kept clean and clear.

8. Daily unannounced inspections will be conducted to ensure sanitation requirements are being met and to assist in the control of contraband.

**G:** *INMATE CLOTHING / PROPERTY*

**G1.** Property and Clothing Storage

1. Your personal property and clothing are collected at admission. The clothing is placed in a storage bin in Prisoner Property. You are given a receipt for these items, which you must keep until you are released.

2. Items may be added to your personal property if something legal, but not authorized for you to have, is sent to you through the mail. Legal items mailed to the facility but not authorized in housing will be placed in inmate's property.

3. You may check with your housing unit officer about how to release your personal property to someone in the community. You may not release any personal property to another inmate.

4. At your release, an officer inventories your personal property with you present in order to ensure everything is returned to you.

**G2.** Inmate Clothing

1. When provided with a jail uniform, you are expected to wear the uniform correctly. Oversized or too small uniforms are not normally allowed and may be exchanged at the discretion of the staff. You may "bag" your pants. Your underclothing should not be visible while wearing your jail uniform. You may not walk or stand with your hands in your pants or inside your clothing.

2. You must be dressed in full uniform by 5:30 a.m. and remain in your full uniform until 9 p.m. Your shirt and pants must be on; your pant legs must be unrolled; and you must wear your issued shoes (foot fully inserted and shoe tied for those shoes with laces.)

3. You are permitted to have two (2) sets of underclothing. Underclothes may be purchased through commissary. Women's bras can be purchased through inmate commissary.

4. If your case goes to trial in either Common Pleas or Federal Court, we accept one set of trial clothes (suit or similar clothing) at the Prisoner Services window, 24 hours a day 7 days a week. Clothing must be picked up after the trial is over no later than 9:00 p.m.

5. Except for health or sanitary reasons, you cannot release the clothes you wore to the jail. If we do allow you to release your clothes, you must have a replacement set brought in at the same time.

6. You may wear head covers only when you have received special permission for medical or religious reasons, or when in the kitchen if you are a food service worker.

7. You are permitted to have eyeglasses that are prescription (prescribed by your physician) or possess magnification properties. All sunglass style eyewear is considered cosmetic in nature and is not acceptable. Tinted lenses (green, red or brown) if prescribed by your physician for medical reasons (i.e. glaucoma, retinitis pigmentosa) is permitted.

# H: COMMUNICATION

## H1. Incoming Mail

1. Your mailing address is:

   *Your name as it is written on your armband*
   Montgomery County Jail
   330 West Second Street
   Dayton, OH 45422-0426

2. Mail is delivered to the jail Monday through Friday, except on holidays. After the mail is processed, it is delivered generally by 8:00 p.m.

3. All mail is opened and inspected for money and/or contraband (see #10 of this section). Mail marked "Legal Correspondence" from your attorney, a court, or a public official, such as a probation or parole officer, is opened in front of you. Mail not marked in a way to indicate it contains privileged/legal materials, or is from a source not considered to be privileged, is subject to the standard inspection procedures. We do not censor or read incoming mail, unless it is clearly necessary for the order and security of the jail, and then only with the approval of the court.

4. Only mail delivered by the U.S. Postal Service is accepted at the jail. We do not accept notes or letters dropped off for you by friends or family, or given to a staff member for you from another inmate.

5. Montgomery County Jail staff will not accept any books, magazines, parcels, newspapers, photocopied items, or any large packages mailed or brought to the jail, unless delivered by inter-departmental mail, clergy or the inmate's attorney, or is pre-approved by the Program Coordinator / Jail Chaplain. Packages will be refused if they would create storage problems.

6. If your mail contains a money order, the jail bookkeeper credits the funds to your commissary account. Personal checks are not acceptable and are placed with your personal property.

7. If your mail contains items that jail regulations do not permit you to have, the items will be placed with your personal property or disposed of in accordance with our contraband policy. Contraband, which constitutes a criminal violation, may result in charges being filed against the sender.

8. We deliver legal reference materials and religious publications. You must request permission to receive other books through the mail. Special permission should be requested on a *Jail Request Form* and submitted to the Program Coordinator for review. Any items sent to you without permission are placed with your property.

9. C.O.D. postage due mail will not be accepted.

10. Items that will not be given to you include:

    a. Photographs or drawings of nude or partially nude persons, which depict sexual, violent acts, illegal acts, or gang related activities.

    b. Illustrations and/or text, which show or describe the manufacture of, or fabrication of, weapons or tools.

    c. Other items which could be expected to encourage violent or disruptive behavior by you or other inmates.

    d. Photographs or drawings that show a person in attire which would not be acceptable attire to be worn in public or which shows various stages of undress, such as underwear.

## H2. Outgoing Mail

1. You may mail as many letters as long as each letter:

   - Is sealed
   - Has proper postage
   - Is properly addressed
   - Has the correct return address
   - Is free of explicit drawings that depict sexual acts and/or profane words

2. You must place in the upper left corner of the envelope the following correct return address:

   *Your name as it is written on your armband*
   330 West Second Street
   Dayton, OH 45422-0426

   This practice will only be restricted when clearly necessary for the order and security of the jail.

3. Staff collects outgoing mail daily. The U. S. Postal Service picks up mail after 8:00 a.m. Monday through Friday, except on holidays.

4. Your outgoing mail is not opened or read.

5. Mail being sent to the Montgomery County Adult Probation Department, the Montgomery County Common Pleas Court and Judges, the Sheriff, the Dayton Municipal Court and Judges, the Jail Administrator, or employees of the Sheriff's Office and Dayton Police Department requires no postage.

6. You may correspond with another inmate in the facility only by mail, sent via the U.S. Postal Service. Staff members and other inmates are not permitted to deliver mail or pass notes from one inmate to another.

## H3. Cell Intercom Call Buttons

1. Do not pound on the doors or glass. Each housing unit, cell and multi-use areas are equipped with intercom call buttons that you press once to activate. Otherwise, wait until your cell is unlocked. You are expected to use the intercom system for emergencies, immediate hygiene issues, and life/safety issues. Do not use the intercom system for routine requests or questions. Staff may take disciplinary action against you if you choose to misuse the intercom system.

2. The pods and dorms are equipped with red mushroom type emergency panic buttons, which you may press only if a life/safety emergency exists. Misuse of the panic button is a Serious Rule Violation.

## H4. Telephone Calls

1. Most housing units are equipped with collect call phones in the common areas. All phone calls are recorded and subject to monitoring at any time. These phones are provided for you to make both personal and legal phone calls. Damage or misuse may result in the phone being turned off, disciplinary sanctions, and possible criminal charges.

2. The housing unit officer usually turns the phones on when the unit has passed inspection after morning clean up.

3. You are expected not to monopolize the phone, use abusive or loud language, or listen to others' conversation.

4. The housing unit officer monitors the use of the telephone and may enforce time limits on calls when necessary.

5. If the phone is damaged or broken, repairs are scheduled with the telephone company. No special arrangements are made for you to use a phone during this time.

6. If you need to contact your attorney, or other official, who will not accept a collect call, submit a *Jail Request Form* to your housing unit officer requesting a legal phone call. In most cases a staff member places the call for you and leaves a message for the person to visit you as soon as possible.

7. Inmates are not permitted to use free phones after initial book-in, except for emergencies. We must verify the existence of an emergency before you are given permission to place a "special" telephone call. Your housing unit officer can assist you in making a request to place an emergency call, and with arrangements to place the call if it is approved. A staff member dials emergency calls from a free phone.

8. If you wish to call someone who has a block on their phone line to prevent collect calls, it is your responsibility to contact these people by other means, such as visitation, attorney, clergy, or mail. Phone blocks do not justify special calls. Follow the procedure for special calls in cases of emergency.

9. Special long distance phone calls are not allowed, except in the cases of individuals that need to make international calls.

10. It may be necessary during a jail emergency to stop all inmate telephone use.

11. The Jail staff does not transfer incoming personal telephone calls to you or take telephone messages for you.

12. If we receive complaints from the people you call, you may be moved to an area, which does not have a phone.

13. Telephone harassment is a criminal offense. Making unwanted or obscene telephone calls, or calling any person other than the party accepting collect charges by using call forwarding and or three way calling may result in your being prosecuted in a court of law in addition to disciplinary sanctions being imposed.

14. If you are housed in a dormitory unit, all of the above rules apply to your telephone use, except the hours during which you have access to collect call telephones may be longer.

15. You are able to contact the Public Defender's Office directly. The hours are from 8:30 a.m. to 4:30 p.m., Monday thru Friday, by dialing: 937-225-4652. This is a free call and is not subject to being recorded.

16. To make a phone call, pick up the phone and press 1 for English or 2 for Spanish. You will then be asked to enter your personal identification number. This is your booking number plus the last four digits of your social security number. The dash in your booking number needs to be entered as a "0" in the phone system. (Example: If your booking number is 12- on the phone, press 1 for a collect call or press 6 for a call using a calling card.

## H5 Visitation

1. You are encouraged to have family and friends visit you. You are eligible for a personal visit 24 hours after your booking process is completed and once weekly thereafter. The visitation week begins on Monday and runs through Sunday. Up to three (3) persons may visit you at one time.

2. If you are sentenced and are waiting to be transferred to a state or federal institution, or if you are an inmate worker, you are allowed two (2) visits per week. If you have already begun serving your sentence and return from a state or federal institution, you are only entitled to one (1) visit per week.

3. An inmate cannot have two visits on the same day.

4. You may restrict certain people from visiting you by completing a *Jail Request Form* and listing the names of up to five (5) specific persons you would like admitted to see you. If your visitation list is not restricted, the first, up to 3, including children that sign in are permitted to see you, and will count as your weekly visit.

5. A parent or guardian must accompany children (persons under 18 years old), unless he/she is your legal spouse. Verification is required.

6. You are allowed at least thirty (30) minutes for your visit, unless:

   a. You or your visitor(s) violate any jail rules.

   b. Your visitor arrives less than thirty (30) minutes before the end of the visiting period. If you accept a visit when less than thirty (30) minutes remain in the visiting period, the visit will count as your weekly visit.

   c. You or your visitor ends the visit.

7. Contact visits with family and/or friends are not permitted. However, most professional visitors (attorneys, probation/parole officers) are contact visits.

8. Visits between inmates are not permitted without special permission from the Jail Administrator or his designee.

9. A visitor will be denied visitation approval if:

   • They are currently involved in your criminal case or court proceeding (Domestic Violence victim, Child Endangering victim, active TPO or CPO, etc.)

- They represent a clear and present danger to the security of the jail.
- They have a past history of disruptive conduct at the jail.
- They are not properly dressed in acceptable street clothing including shirt and shoes.
- They refuse to submit to a search or show required identification.
- They are under the influence of drugs and/or alcohol.
- You refuse the visit. If you refuse the visit, it does not count as your weekly visit. You may be required to designate specific visitors on your list if you refuse a visit.
- They are under the age of eighteen and are not accompanied by a parent or guardian (unless he/she is your legal spouse, verification is required.)

10. If you are serving a weekend sentence, you are not permitted visitors.

11. It may be necessary during an emergency to cancel all scheduled visitation without prior notice.

12. Special visits are approved by the Jail Administrator or his designee and do not count against your regular visits. To request a special visit, complete a *Jail Request Form* with the necessary information, and return it to the housing unit officer. The Jail Administrator will use the following guidelines for approving special visitors:

    a. Visitor resides outside a fifty (50) mile radius of the jail and has identification proving residency.

    b. It is not possible for person to visit during regular visiting hours, employer verification is required.

    c. A sudden family medical emergency, verification is required.

13. Your attorney or other officials may visit as often as needed and at any reasonable time, usually 8:00 a.m. to 10:00 p.m. Professional visits do not count against your weekly personal visiting privileges.

14. Clergy may visit you at any reasonable time, with proper identification. These visits do not count against your weekly visiting privileges. Proper identification consists of a Greater Dayton Christian Council, Miami Valley Hospital, or other official Chaplaincy Program Identification Card.

15. Clergy members related to you by blood, marriage, or adoption is not allowed a contact visit. Clergy contact visits must be approved. Falsification of a material fact pertaining to personal relationships results in that person being prohibited from any future visits with you.

16. No previous inmates of the Montgomery County Jail will be permitted to visit within 60 days.

17. Daily visitation hours:

    9:00 a.m. to 10:00 a.m. - *Weekends and Holidays Only*
    1:00 p.m. to 3:00 p.m.
    7:00 p.m. to 8:30 p.m.

\*\*visiting hours for Special Management Housing Units and juveniles is thirty (30) minutes before the normal visitation times.

18. The Montgomery County Jail is located at:
    330 West Second Street
    Dayton, Ohio 45422
    Inmate Information/Visitation Information – (937)496-3059 or www.mamivalleyjails.org

19. Metered Parking is available on Second Street and the Montgomery County Parking Garage is located on St. Mary Street. Visitors may not park in any parking area around the jail building. Violators will be towed at the owner's expense.

20. Information on public transportation may be obtained from the Regional Transit Authority located at:
    22 South Main Street
    Dayton, Ohio 45402
    (937) 226-1144 Rider/Route Information

## H6. Media Contact

1. You are advised to consult with your attorney prior to participating in an interview with the media.

2. If you initiate contact with the media, this handbook informs you any statements you make to the media may be used at your hearing or trial.

## H7. Voting Information

1. During an election year, if you are an eligible registered voter as defined in the Ohio Secretary of State Directive 2010-92, you are permitted to have a family member or friend bring your Absentee Ballot Application to the Montgomery County Jail.

2. Once you receive your Absentee Ballot Application, it will be your responsibility to complete the application and mail it back to the Board of Elections, via USPS (United States Postal Service) before the deadline set by Board of Elections.

## H. GENERAL SERVICES

## H1. Meals

1. Meals are planned to provide balanced nutrition and variety and are prepared in the jail kitchen. Meals are served three (3) times a day with no more than 14 hours between any two meals.

2. Special diets may be considered for health or religious reasons. Should you desire a special diet for health or religious reasons, you must complete a *Jail Request Form* detailing the circumstances, and forward it to the housing unit officer. We must verify your need for a special diet before it will be approved

3. You are provided with a nutritionally adequate "bag meal" when you are going to or coming from court or another detail and cannot be in your housing unit during scheduled meal times.

4. You may accept or decline to eat any food served, but you are not permitted to take or steal food belonging to someone else. You are required to be in the eating area even though you do not wish to eat. You may not save seats.

5. You must return all cups passed out at mealtime. All cells in your housing unit will be searched if all cups are not returned.

6. You are not allowed to hoard or store any food, except your commissary snacks and health care staff approved items. If you do not eat what is served, the uneaten portions are to remain on the tray. Uneaten food discovered in your cell is confiscated and disposed of.

7. No cooking or reheating of food is permitted.

## 12. Personal Hygiene

1. You are expected to shower at least three (3) times a week in order to maintain an acceptable level of personal hygiene. Hot showers are offered daily.

2. Razors and nail clippers are passed out by staff on a daily basis between 5:00 a.m. and 6:00 a.m., and must be returned when any staff member asks for their return.

3. Your uniform and linens are exchanged according to the laundry schedule posted in your housing unit. Blankets are exchanged once a month according the laundry schedule. You are expected to participate in each laundry exchange. If you do not change soiled items when the laundry exchange is announced in your area, you may have to wait until the next scheduled laundry exchange.

4. You have the opportunity to have your personal undergarments (t-shirt, socks, underwear) laundered twice a week during uniform exchange. To participate, ask your housing unit officer and/or laundry coordinator during the uniform exchange. You may not make any other requests during laundry exchange. Attempted distraction of the officer is considered disruption of the housing area. **The Montgomery County Jail is not responsible for lost or stolen undergarments.**

5. If you need personal hygiene items, such as a toilet paper, ask your housing unit officer. You may purchase additional hygiene items through the commissary.

## 13. Commissary

1. At the time of your initial incarceration, any money you came in with is automatically placed in an account in your name to purchase commissary. Family and friends may make deposits into your commissary account by using the kiosk inside the jail lobby. The kiosk accepts Visa, MasterCard and cash. **Personal checks and money orders are not accepted.**

2. You may purchase an unlimited quantity of paper, stamped envelopes, pencils and phone cards. The amount of items cannot exceed $100.00 per week from the approved commissary list.

3. You may purchase only personal hygiene and correspondence items if your commissary privilege has been restricted, as a result of violating a rule.

4. Before your commissary order is filled, your account is checked to make sure you have the funds to buy what was ordered. If you don't have enough money in your account, your order is adjusted at the discretion of the commissary vendor.

5. After you are incarcerated for two weeks and have less than $1.00 in your commissary account, you will be considered indigent and may receive a Welfare Kit. You may order a welfare kit every fourteen (14) days you are considered indigent. You must write **"Welfare"** on your order form.

6. A Welfare Kit consists of:
- One (1) toothbrush
- One (1) tube of toothpaste
- One (1) bar of soap
- One (1) razor
- Four (4) stamped envelopes
- One (1) writing tablet
- One (1) pencil
- One (1) comb

7. You may not transfer funds to another inmate's account.

8. When you receive your commissary, the amount of money in your account is noted on the bottom of the returned commissary sheet. The Montgomery County Jail is not responsible for lost or stolen commissary items.

9. Make sure you have received the correct items when your commissary is delivered. No adjustments will be made after you sign the commissary receipt.

10. To make a commissary order, pick up the phone and press 1 for English or 2 for Spanish. You will be asked to enter your personal identification number. This is your booking number plus the last four digits of your social security number. The dash in your booking number needs to be entered as a "0" in the phone system (Example: if your booking number is 12-1234 and last four of your SSN is 6789, your PIN is 1201234678 9.) Follow the prompts on the phone, press 9 to place a commissary order. Refer to the Commissary Order Sheets posted by the phones when placing your order.

## 14. Money

1. Only cash in your possession when you were booked in or money orders are placed into your commissary account for use in purchasing commissary items. Personal checks, payroll checks, etc. are placed with your property and cannot be used for commissary or posting of bond, etc.

2. Visa, MasterCard and cash are accepted at the kiosks inside the jail lobby at any time so family and friends can place funds on your commissary account.

3. You may release money to anyone who is not currently in the jail. If you desire to release your money, you must release all your money, not just part of it. The entire balance of your funds will be placed on a pre-paid MasterCard and given to the person signing for your property.

4. If you choose to release your commissary money, you will have to release the entire amount. You can only release your money (2) twice.

5. You cannot transfer money to another inmate.

## 15. Haircuts

1. Inmates in need of hair cutting services must complete a *Jail Request Form* and submit it to the housing unit officer.

2. Inmates who volunteer their service perform all haircuts.

3. Gang related styles, designs, symbols, or anything of an extreme nature will not be permitted.

## I6. Inmate Identification Armbands

You are issued an armband when you are booked in. It is your responsibility to wear it at all times. Inmates who do not wear their armbands do not receive mail, commissary, visitation or other privileges. Immediately notify your housing unit officer if your armband becomes faded or worn.

## INMATE PROGRAMS

Only items authorized by the program staff is allowed to be taken to programs.

## J1. Religious Services

Church services are conducted on a weekly basis. Days and times are determined by the Program Coordinator/Chaplain. These services are conducted by volunteers from the Miami Valley area.

a. Inmates in floor/linear housing wanting to attend church services should complete a *Jail Request Form* and submit it to the housing unit officer. Your name will be placed on a list of inmates interested in attending church services. All other church services are held in the pod and dorm housing units.

b. Inmates who pose a security risk, have a keep separate or have a serious health concern are not permitted to attend religious services. However, you may have the opportunity to meet with a clergy volunteer, on an individual basis, by completing a *Jail Request Form* and submitting it to your housing unit officer.

## J2. Recreation

1. You are encouraged to participate in regular physical activity, whenever possible, in order to maintain your health, reduce stress and improve your mental outlook. Every week you are given the opportunity to voluntarily participate in outdoor recreation.

2. In addition to outdoor recreation, television watching, cards and games are permitted as leisure time activities in your housing unit. Ask your housing unit officer about television rules and about the availability of cards and games in your unit, as those materials are available.

3. You may not exercise in the direct supervision day room areas, or use any furniture, clothing, linens, or equipment in the housing area for exercise unless approved.

4. Your recreation privileges may be temporarily restricted as part of sanctions imposed on you for a rule violation.

5. If we believe you pose a risk to the security or safety of the jail staff or other inmates, you may be denied recreational opportunities.

## J3. Library Services

1. Your housing unit officer can explain to you the schedule and process for borrowing books for leisure reading through the inmate library service.

2. If you need legal materials, complete and submit a *Jail Request Form* to the recreation staff and they will provide you with available legal material. You can also obtain legal materials through your attorney.

3. Inmates in Special Management or Disciplinary Detention units have a right to obtain legal materials only, and can do so by completing and submitting a *Jail Request Form* to the recreation staff.

## J4. Interpreter Services

The housing unit officer for those inmates who request and need them arranges interpreter services.

## J5. Education/Substance Abuse/Counseling Programs

1. Various educational, substance abuse and counseling programs are available to eligible inmates. You may wish to participate in educational classes ranging from literacy to high school equivalency, substance abuse, or counseling programs such as Alcoholics Anonymous or training in finding a job.

2. You may ask your housing unit officer about available programs.

3. You may make an application to a program by completing a *Jail Request Form* and giving it to your housing unit officer. He forwards it promptly to the programs coordinator for evaluation and scheduling for the requested program.

4. You are notified in writing whether or not you have been accepted to participate in the program you requested.

## J6. Inmate Worker Program

1. You may request to be considered for the Inmate Worker Program by checking the appropriate box on a *Jail Request Form*. Complete and return the request form to your housing unit officer. The request form is forwarded to the inmate worker coordinator.

2. You may be chosen as an inmate worker if you are qualified. You are notified in writing or in person when you are accepted to the program.

3. Following all rules and regulations of the facility, as well as those specifically for inmate workers, ensures that you maintain your acceptance in the Inmate Worker Program.

4. When you chose to disregard jail rules or regulations, any staff member may recommend your removal from the Inmate Worker Program as part of disciplinary action taken against you.

## J7. Release Programs

Inmates wishing information on the variety of social services available after release should submit a request form to the programs director. Social Services: Job training, Shelters, Clothing and Food.

K:     HEALTH

K1.     Medical Services and Medications

The Montgomery County Sheriff recognizes that good health care is important to your well-being and positive adjustment to incarceration. Health care staff is on-duty 24 hours a day, 7 days each week. If you have a non-emergency medical problem, complete a Health Services Request Form and hand it to the medical staff or medical officer or hand it to the health care staff during medication rounds. DO NOT fill out more than one request form for the same medical problem unless your health care staff has told you to. DO NOT fill out more than one request form for the same problem if medical staff has already seen you and you are in need of follow-up care. Filling out more than one request form for the same problem will not get you to sick call any faster. Misuse of medical forms can result in disciplinary action.

Medical Services Inmate Orientation

1. Medical services are provided by medical professionals. Services available may include:
   • Assessment and treatment of medical illness.
   • Referral to a doctor, if necessary.
   • On-going medical care
   • Medical hospitalization, if necessary.

2. In order to receive medical treatment, a *Release of Information* form, which allows us to contact your regular doctor or hospital, and *Consent to Treatment* form, which allows us to provide medical treatment to you, must be signed. If you refuse to sign the *Consent to Treatment* form, we will not be able to treat you for non-emergency needs.

3. If you wish to speak with medical staff about routine matters complete a *Health Services Request* form and place it in the medical request box or hand it to the nurse on rounds in your housing unit.

4. In emergency situations, or if you have concerns that need to be addressed immediately, contact the Health Services Administrator or any corrections officer so you may receive medical assistance as soon as possible.

5. If you believe the medical services offered you are not adequate, you may notify the medical staff, submit an informal complaint to the Health Services Administrator or file an Inmate Grievance according to the jail's policy.

6. Rude, abusive or uncooperative behavior will not be tolerated by medical staff.

7. You will be informed at the onset of treatment or assessment of any license supervisory arrangements between health professional assisting you and his/her supervisor. If the health professional is under supervision, the supervisor is ultimately professionally responsible for your care, upon request you may meet with the supervisor.

8. Medical information is confidential except in the following situations:
   a. The medical department may release your health information to correctional staff or other health care staff when you are:

   • Suicidal
   • Homicidal
   • Presenting clear danger of injury to self or others
   • Presenting reasonably clear risk of escape or creation of internal disorder or riot
   • Requiring movement to a special unit for evaluation or treatment of acute care
   • Requiring transfer to a treatment facility outside of the correctional environment
   • Requiring a new program assignment for medical or security reasons

   b. Medical staff shall have access to your medical information when acting in the course of their specific duties.

   c. Mental health staff may have access to your medical information on a need to know basis by request to the Health Services Administrator.

   d. The following personnel may have access to your health information on a need to know basis to the Health Services Administrator:
      • Jail Administrator or his designee
      • Internal investigative staff
      • NaphCare and accrediting body audit staff
      • NaphCare legal counsel or other attorneys representing NaphCare
      • Persons authorized by an order or judgment of a court with appropriate jurisdiction

   e. Health care providers may have access to your health information if the information is needed to provide you health care.

   f. All other persons or agencies need a written authorization signed by you or a court order to have access to your health information

9. Medical professional have a duty to report to appropriate authorities (county children's services boards or county police departments) on unreported suspected abuse or neglect of child or vulnerable adult.

10. If you have a medical problem that is an emergency (life-threatening) push the panic button or tell any officer about your emergency problem. The panic alarm system is to only be used if you have a true life-threatening emergency.

11. Inmate Health Care Co-Payment Program includes the following:

Services that DO NOT Require a Co-Payment

* Life threatening medical emergencies
* Routine physical
* Mental Health evaluations
* Specialty clinics (STD, TB, prenatal)
* X-Rays and lab tests
* Drug and alcohol programs

### Self Initiated Non-Emergency Requests that Require a Co-Payment

| | |
|---|---|
| * Paramedic/Nurse Sick Call | $4.00 |
| * Physician Sick Call | $5.00 |
| * Dental Clinic | $5.00 |
| * Pharmacy Handling Fee | $4.00 |

12. You will always be advised of co-payment charges BEFORE services are given to you. It will be necessary for you to sign a charge sheet stating that you understand that there is a charge for service.

13. Co-Payment charges are deducted from your commissary account only AFTER you are given medical care.

14. If you do not have enough money in your account, a negative balance will be placed on your account and that amount will be deducted should there be any deposits made during your stay in jail.

15. At no time will any inmate be denied health care based on his/her inability to pay.

16. You retain the right to refuse health care and there will be no co-payment charge should you cancel a sick call appointment. You also retain the right to use the grievance process to resolve issues that you have been unable to resolve directly with the health care staff.

17. The health care staff conducts sick call 7 days of the week. You will be evaluated at sick call as soon as possible but the order in which the health care staff sees patients is based on the severity of the problem and not in the order in which the request form is received.

18. If your medical problem requires the services of a specialist, the health care staff will make arrangements for you to be escorted to the appointment. The health care staff will let you know that an appointment has been made but will not let you know the date or time of the appointment. If you are getting released before you go to the appointment, let an officer know that you have an appointment and that you need to get the date and time from the health care staff before you leave the jail. Should you forget to ask the officer to get the appointment date and time before you leave you should call (937) 496-4160 and ask to speak to the health care staff to get the information.

19. If you take prescription medication, the health care staff will call your doctor to verify the prescription(s). Once the prescriptions are verified, the medications will be ordered and then delivered to you during medication rounds at a time that has been approved by the jail physician. There is a $4.00 Co-Payment fee for each prescription every month that you take the medication. This fee is a processing fee and will be charged even if the health care staff uses medications that you brought into the jail with you or had friends or family drop off at the jail for you.

20. You are to take the medication at the time that the health care staff gives it to you unless instructed to do so otherwise. If you do not take the medication as instructed the physician may take you off of the medication. If you do not want to take medication on a particular day you must tell the health care staff that you do not wish to take it and give them a reason why you do not wish to take it at that time. If medication that you were to have taken is found

during cell searches, the medication will be confiscated and a report will go to the physician for review and you may be taken off the medication.

21. Some non-prescription over-the-counter medications such as generic Tylenol and Motrin are available for purchase through the commissary. You are asked to order commissary medical items on your scheduled commissary day and plan ahead; however, on occasion, you may have a need for Tylenol or Motrin. You can put in a commissary slip for these items any day of the week. Requests for these medications will be processed as soon as possible (within 24 hours Monday through Thursday and within 72 hours Friday through Sunday).

22. If you have no money in your commissary account and are in need of Tylenol or Motrin, you must submit a request form in order to receive a limited supply for the month. (If you have been in the jail for two or more weeks), your request for the limited supply of free Tylenol or Motrin will only be processed if you have not had money in your commissary account for the previous two weeks).

23. Personal tennis shoes will not be authorized by the health care staff unless it can be verified that you are currently being treated by a physician for foot, ankle, or knee problems, you have an obvious birth defect involving the legs, or you have had recent surgery on one or both of your legs or for any medical reason or authorized by healthcare staff.

24. If you wish to be evaluated by your private physician you must fill out a request form so that the health care staff can make arrangements. In order to have a private physician come into the jail to evaluate your medical concern, the following guidelines must be met:

   a. You have a medical condition that needs to be evaluated by your private physician so that the health care staff can verify.

   b. You make the necessary financial arrangements with the physician because you will be responsible for all costs associated with the physician's visit.

   c. The jail health care staff will schedule the appointment and an examination room will be made available to the physician.

   d. All treatments, medication orders, and follow up visits will be subject to authorization by the Director of Medical Services and the jail Physician.

25. If the health care staff authorize special medical appliances (i.e. crutches, cane, braces) they will give you the yellow copy of the Special Issue Authorization Form. You must keep your copy of the form with you at all times in order to keep your special issue item. Should you loose your copy of the form you must submit a request form letting the health care staff know you lost it. Any corrections officers can take any special issue item from you if you cannot show your copy of the form.

26. Making false medical claims are subject to disciplinary action, following an assessment of your claim by a member of the health care staff.

### K2. Dental

1. Dental care is provided at the jail. If you have a painful dental condition you must fill out a "Medical "Mental Health "Dental request form. DO NOT fill out more than one request form for the same dental problem unless the dentist has already seen you and you are in need of follow-up care. Duplicate request forms for the same dental problem can result in disciplinary action.

2. The dentist will see you as soon as possible but the order in which the dentist sees patients is based on the severity of the problem and not in the order in which the request forms are received.

## K3. Mental Health

To see a mental health professional, complete a "*Medical/Mental Health/Dental Request Form*. A mental health worker will see you as soon as possible. If you have an urgent need to see a mental health professional you should tell an officer or the health care staff and they will contact the mental health staff for you.

## L: SECURITY AND SAFETY

### L1. Lockdown and Unlock

1. Mandatory Lockdown
   a. At any time when directed by staff
   b. During an emergency situation or fight
   c. At any time, an inmate is ordered pending disciplinary action
   d. At the beginning of all security head counts as ordered by the watch commander
   e. At normal, nightly lockdown time
   f. At the time of medication, laundry, or commissary

2. Prior to lockdown time, your housing unit officer directs you verbally or over the unit intercom system to go to your cell and close your door.

3. Inmates are to immediately lockdown or report to their bunks whenever there is a disturbance in the housing unit whether or not the officer has the opportunity to announce lockdown. You are expected to immediately comply. Non compliance can result in disciplinary action regardless of involvement in the initial disturbance.

4. If you refuse to cooperate with a lockdown, you violate a facility rule, and disciplinary action will be taken against you.

### L2. Counts

1. For your security and safety, the staff conducts several scheduled and unscheduled head counts to verify the presence of all inmates. Your cooperation is expected.

2. You are expected to return to your assigned cell or designated area when directed to do so. When you are in your cell, you must remain in full view, display your armband and answer staff questions so that you may be identified.

3. Talking to or otherwise distracting the housing unit officer conducting the count is a rule violation.

### L3. Contraband

1. You are prohibited from having in your possession or under your control, including in your housing unit or cell, any item or items that are not

   a. Issued to you by the Montgomery County Jail,
   b. Purchased by you through the commissary,
   c. Otherwise authorized to you by jail policy or staff in writing.

2. Any issued or authorized item that is used in an inappropriate manner, altered from its original condition, or possessed in unauthorized quantities is considered contraband.

3. If an item in your possession or control violates the law, you may be charged with a crime. You may also face disciplinary action.

4. If an item in your possession violates a rule but is not otherwise unlawful, you may face disciplinary action as well as having the item confiscated.

5. If an item belonging to you is confiscated and its possession is not a crime, a health risk, or a safety risk, the item is placed with your property. If the item does pose a health or safety risk, we properly dispose of it. You are notified as to what was done with it.

6. Body piercing jewelry is removed upon arrival at the facility, you may not use or wear any item in any body piercing, including but not limited to broom strands.

### L4. Security Inspections

1. In addition to daily scheduled hygiene and safety inspections, the staff may find it necessary to conduct an unscheduled inspection / search of your cell and common area. Such a search is done in a thorough, professional and non-destructive way.

2. You are required to cooperate with the staff during these inspections. You do not have the right to be present during the inspection.

3. Any contraband items found during an inspection are confiscated, and you may be subject to disciplinary action and possible criminal charges.

### L5. Searches

1. Searches are performed on inmates when necessary and appropriate in order to deter offenders from fabricating, introducing, or conveying contraband into the jail and to discover breaches in jail security.

2. You may be subjected to pat searches anytime a staff member thinks it is necessary.

3. You may be subjected to a strip search when a staff member has reason to believe you may possess contraband

4. A strip search is completed by an officer of the same sex as the inmate and in an area/room separate and out of video from other inmates and staff.

### L6. Movement

1. Upon leaving your cell to go into the common area, visiting, recreation, or any other area of the jail, you must be fully dressed in jail-issued clothing, including your inmate identification armband.

2. If you are permitted to move through the jail without an officer escort, you must first have authorization from your housing unit officer or appropriate staff member. With or without an

3. escort you are expected to proceed in an orderly manner with your right shoulder to the right wall of the corridor directly to your destination. You are not allowed to talk with any other inmate. You may talk with a staff member only if he addresses you first.

4. When you arrive at your destination, it is your responsibility to immediately inform the designated staff member of your arrival.

5. You are required to observe the colored floor lines in and out of your housing unit, remembering that you never cross a red line and you may cross a yellow line only after receiving staff permission. Other lines exist to aid you in movement and will be explained to you as needed.

6. Do not communicate with people in other housing units or with inmate workers. Do not stand at housing doors or windows.

## L7. Use of Force

The staff members use only the amount of force that is reasonable to protect an individual from injury, to prevent escapes or to enforce orders or regulations.

## L8. Fire Safety and Emergency Evacuation

1. Fire safety begins with personal sanitation and housekeeping. A limitation on the type and quantity of combustible materials you may possess in your cell is explained in the "Permitted Items" section of this handbook. You may not smoke in any area of the jail.

2. Fire drills are to be treated as if an actual fire exists. Fire evacuation safety measures are posted on each housing unit's information board. You should know them for your safety and that of others.

3. In the event of a real fire or other emergency, it may be necessary to evacuate inmates to another area of the jail, or out of the facility. Carefully listen to and follow the instructions of your housing unit officer, work assignment supervisor, or other staff member.

## L9. PREA- Prison Rape Elimination Act, Sexual Assault, Misconduct, or Harassment

1. It is the policy of the Montgomery County Sheriff's Office to provide a safe, humane and secure environment, free from the threat of sexual misconduct for all inmates. In accordance with the Prison Rape Elimination Act of 2003 (PREA), the Montgomery County Sheriff's Office will maintain a program of prevention, detection, response, investigation and tracking. The Sheriff's Office maintains a zero tolerance for sexual misconduct in the Jail. Sexual misconduct among inmates and by staff towards inmates is strictly prohibited.

2. An inmate may report sexual misconduct to any employee. Jail staff will accept reports made verbally, in writing, anonymously, and from third parties.

3. It is a crime for a staff member to have sexual contact or relationships with an inmate. Any inmate having knowledge of sexual involvement between a staff member and inmate is to report this information to any Jail staff member, including the Jail Administrator or the Assistant Jail Administrator.

4. Sexual misconduct or harassment to an inmate, staff member, volunteer, or contract personnel is subject to administrative disciplinary penalties and/or criminal charges.

5. Do not accept food, cigarettes, clothing or other items from other inmates; do not go into debt in any manner. You may be expected to repay these debts with sex. Beware of inmates who say that they will protect you.

6. Immediately report all incidents of sexually oriented advances from other inmates to a staff member. If you do not feel your report was taken seriously, report it again to any other staff member you feel comfortable reporting it to.

7. If you are sexually assaulted, immediately report it to a staff member. Do not clean yourself, brush your teeth, wash your clothes or do anything else that could destroy evidence of the assault. The sooner you report the assault the better the chances evidence can be obtained that will help prove the assault.

8. You may also report any sexual assault that occurred inside the jail through the inmate phone system by pressing (0) to get the PREA line. This line is an anonymous line and all complaints will be investigated to their fullest potential. If you request a personal follow-up to your complaint, you will need to leave your full name and booking ID number at the end of your message. Your complaint will be followed up as soon as possible and completed in a discreet manner.

9. When a sexual assault is reported you will be medically checked. If the assault has occurred recently you will be transported to a hospital. At the hospital you will be examined for injuries and evidence collected. Evidence may include hair, saliva, semen, or clothing fibers.

10. Victims of sexual assault may experience physical and emotional symptoms. Report any concerns to medical or mental health services.

11. Inmates may privately or anonymously report sexual abuse or sexual harassment to victim advocates. The Victim / Witness Division can be reached 24 hours a day at (937) 225-5623 or in writing at:

Victim / Witness Division
P.O. Box 972
Dayton, Ohio 45422

12. Mandatory reporting rules governing privacy, confidentiality, and / or privilege applying to disclosures of sexual abuse and sexual harassment made to victim advocates are applicable, including and limits of confidentiality under relevant federal, state, and local laws.

## M: RULES, DISCIPLINE, AND GRIEVANCE

## M1. Rules, Violations and Sanctions (Penalties)

1. You have the right to know what behavior is expected of you and the penalties for misbehavior. You are subject to disciplinary action for violation of any rule, regulation, or procedure contained in this booklet, as well as any acts that may violate local, state, or federal law. If, by breaking a rule you also commit a crime, you may face criminal charges in addition to any disciplinary action you may receive within the detention facility.

2. You are to show respect for property of others and the jail. Do not lie on the chairs or put your feet on the furniture or walls. Criminal charges may be brought against anyone defacing or destroying county property. You may be financially responsible for any property you alter, deface, or destroy.

3. There are three (3) types of rule violations, each with a minimum and maximum penalty.

a. **Serious (A) Rule Violations** - Rule violations which are a present and immediate threat to the security of the jail or its staff, inmates, or visitors, or any act which constitutes a violation of local, state, or federal law. Serious (A) Rule Violations include but are not limited to:

A1 Assault on any person.
A2 The expulsion of any body excretions (spit, urine, etc...) towards any person or on any county property.
A3 Threats to use force against staff.
A4 Sexual misconduct, all sexual acts (consensual or non-consensual) with staff members, volunteers, contractors, or inmates.
A5 Bribery or attempted bribery of any staff member.
A6 Maliciously making unfounded complaints or charges against staff members.
A7 Harassment.
A8 Theft/possession of a staff members or another inmates property.
A9 Self-mutilation, including but not limited to tattooing.
A10 Encouraging or creating riots.
A11 Escape, attempted escape or aiding another in an escape.
A12 Arson
A13 Putting foreign material into or misusing electrical wall outlets
A14 Possession of a weapon, chemical agent or any object which has been modified so that it may be used as a weapon.
A15 Possession of drugs, alcoholic beverages, or intoxicating substances and/or their use.
A16 Purposeful flooding of the jail.
A17 Disrupting or interfering with the security operation of the jail
A18 Tampering with locks and/or safety devices.
A19 Encouraging others to violate jail rules.
A20 Creating a disturbance.
A21 Alteration or misuse of county property.
A22 Damaging county property valued at over $50.00.
A23 Conspiracy.
A24 Extortion.
A25 Forgery.
A26 Attempted Serious Rule Violations.
A27 Multiple and/or persistent Major Rule Violations.
A28 Violation of local, state, or federal statute, even if not criminally charged.
A29 Violation of any published Serious (A) Rules

i. You may be penalized by a loss of privileges and qualified rights for up to 240 hours ten (10) days for each violation.

ii. Privileges, which may be suspended, include:

1. Entertainment
2. Commissary (except for personal hygiene items)
3. Visits by friends and/or family
4. Telephone calls to friends and/or family

iii. Qualified rights, which may be suspended, include:

1. One visit per week by family (reviewed weekly for reinstatement)
2. Two hours exercise per week (reviewed weekly for reinstatement)
3. Clothing, bedding, bed, lavatory and shower (reviewed daily for reinstatement)

iv. Qualified rights are suspended only when it can be shown they pose a serious threat to the security or when jail property is being seriously abused.

v. In addition, you may also be penalized by:

- Placement in the Disciplinary Housing unit
- Loss of any earned good time

b. **Major (B) Rule Violations** - Rule violations which are not an immediate threat to the security of the jail or its staff, inmates, or visitors, but cannot be considered minor. The following are considered Major (B) Rule Violations and include, but are not limited to:

B1 Any unpublished act, which knowingly done constitutes a threat to the security of the jail, or tends to disrupt the operation of the jail, its staff, other inmates or visitors.
B2 Threats against staff.
B3 Disobedience of a direct order from any staff member.
B4 Disrespect, lying, giving false information, or arguing with any staff member.
B5 Fighting, including instigation of or perpetuating fighting
B6 Foul and abusive language or obscene gestures to staff.
B7 Interfering with a staff members duties.
B8 Disruptive behavior including rattling or pounding on any jail doors or windows.
B9 Encouraging misconduct.
B10 Late for count or lockdown. Interfering with a lockdown or headcount.
B11 Entering or leaving a housing area without the unit officers clear permission.
B12 Aiding or abetting another to violate any rule or regulation
B13 Creating a disturbance including arguing, shouting or whistling.
B14 Crossing a red line or any yellow line without staff permission.
B15 Refusal to carry out a work assignment or malingering.
B16 Defacing or damaging jail property, including writing on the walls, ceiling, floor, or bunks.
B17 Misuse of the intercom system.
B18 Sanitary violations or failure to comply with hygiene standards or requirements.
B19 Smoking or possession of tobacco or smoking paraphernalia.
B20 Medication violations.
B21 Dealing of any transaction for which payment of any kind is made, promised, or expected.
B22 Gambling.
B23 Possession of any item not on the list of permitted items.
B24 Stealing or embezzlement of property, obtaining property by fraud, or receiving any such property.
B25 Throwing or tossing any object.
B26 Unauthorized use of telephones.
B27 Attempted violation of any B Rule.
B28 Multiple and/or persistent Minor Violations.
B29 Violation of any published Major (B) Rules.

i. Major Rule Violations include all violations of jail rules and regulations listed as major or serious therefore, Serious Rule Violations can be handled as Major Rule Violations.

ii. You may be penalized by a loss of privileges, for up to 120 hours (5 days) for each major violation committed, as well as placement in the disciplinary detention unit. (Refer back to b. of this topic for details.)

c. Minor (C) Rule Violations - Rule violations which are not an immediate threat to the security of the jail, its staff, other inmates, or visitors. The following are considered Minor (C) Rule Violations and include, but are not limited to:

C1 Disrespect to an inmate or visitor
C2 Entering the cell of another without staff permission
C3 Seductive or obscene acts
C4 Excessive loud noise, such as turning up volume on TV, or shouting from windows or outdoor recreation areas
C5 Failure to properly wear your uniform
C6 Faking or pretending illness
C7 Horseplay
C8 Loud talking or unnecessary noise after lockdown
C9 Manufacturing of any item that can be considered contraband
C10 Movement into an unauthorized area
C11 Standing or loitering on the Pod upper level walkways
C12 Violation of visiting or mail rules
C13 Carelessness with property, such as spoons, cups, mops, buckets, supplies, etc.
C14 Attempted (C) Rule Violations
C15 Violation of published (C) Rules
C16 Any Major (B) Violation considered minor by staff due to uncommon circumstances.

## M2. Due Process - Disciplinary Hearings

1. You may receive a verbal reprimand and loss of privileges, such as commissary, television, telephone, and leisure time activities (games) for up to 48 hours for Minor Rule Violations.

2. Whenever any staff member believes you violated a facility rule, regulation, or procedure, that person submits a report of the incident to his supervisor for review.

3. If the supervisor determines a verbal reprimand is sufficient discipline, the reprimand is given and documented on the report. The report is placed in your file for future reference should you later violate another rule, regulation, or procedure.

4. If the supervisor determines the violation warrants more than a verbal reprimand, the report and any comments or investigative notes are forwarded to the Jail Administrator or his designee, for review.

a. If the review indicates the violation is Minor, Major or Serious you are notified, in writing.

1) The Serious (A), Major (B) or Minor (C) Violation Hearing Procedure is as follows:

1) If the violation is classified as a Minor or Major Rule Violation, you have 24 hours after you receive notification that you have been charged with a Minor or Major Rule Violation, to request a hearing. Your request must be in writing.

2) If the violation is classified as a Serious Rule Violation, you have the right to a hearing, without making a formal request for one, unless you waive (give up) that right, in writing.

3) A neutral officer appointed by the Jail Administrator or his designee conducts a complete investigation of the accusation(s) against you to determine if there is probable cause to believe you did commit a Serious, Major or Minor Rule Violation. This investigation begins within 24 hours after a determination has been made that the violation is Serious, Major or Minor.

4) You receive the following information in writing:
• The specific rule(s), regulation(s), or procedures you are accused of violating.
• Your accuser, unless we believe it is inadvisable to give you that information.
• The date, time, and place where the violation allegedly occurred.
• The facts upon which the allegation is made.

5) You can be placed in Disciplinary Segregation prior to your hearing as a result of the accusation. We will give you the above information within 48 hours after the investigation has begun.

6) At the hearing you have the following rights:
• The right to be heard.
• The right to present evidence.
• The right to cross-examine witnesses, subject to any limitations imposed by the hearing officer. Any limitations are given to you in writing.
• The right to remain silent. Should you choose to say anything at your hearing, your statement(s) may be used against you in any criminal court proceedings.
• The right to have at least 24 hours, after receiving the information regarding your rights, to prepare for your hearing, unless you waive (give up) those time limits, in writing.
• The right to have assistance of a member of the jail staff or of another inmate, in preparing your defense, as determined by the hearing officer.

7) Upon receipt of the request for a Rule Violation Hearing, the hearing will be scheduled as soon as practicable. You will be advised within a reasonable period and with good cause, if there will be a postponement or continuance of the Rule Violation Hearing.

8) The hearing officer is of supervisory rank, appointed by the Jail Administrator or his designee, and is impartial. He is responsible for conducting the hearing in a consistent manner and for making a decision based upon information available and presented. A refusal to testify may be taken as an admission of guilt.

## Page 32

### M3. Complaint

1. You are entitled to submit a complaint any jail staff (housing officer, jail supervisor, Captain, etc.). The following are considered **Complaints**:

   - An act that constitutes misconduct by an employee including a criminal act.
   - Any violation of the inmate's rights.

2. The inmate files a complaint with the immediate supervisor of the employee that the complaint is about. If the employee's immediate supervisor is not available, the individual files the complaint with an available on-duty supervisor. When a supervisor receives a complaint where the inmate refuses to file a sworn complaint or an anonymous complaint is forwarded, a memorandum detailing the incident involving the employee's Division Commander, via the chain of command. The Division Commander decides if additional documentation is necessary and what further action or investigation is necessary.

3. When the investigation is complete, the Sheriff or his designee informs the complainant in writing as to the results of the investigation.

### M4. Grievance

1. The following are criteria for **Grievances**:
   - Medical care
   - Conditions of confinement
   - General discipline procedures
   - Inmate programs participation
   - Telephone
   - Mail

9) Within 24 hours after the hearing, the hearing officer reaches a decision and notifies you, and the staff, in writing of his decision and sanctions. You are given a written statement containing the facts used in the finding and the reason for that finding.

10) Even if it is decided you did not commit the violation, a record of the incident is maintained in a separate file, and it cannot be used against you in any future disciplinary actions.

11) You have the right to appeal the decision of the hearing officer to the Jail Administrator or his designee on a *Jail Request Form*. Your appeal must be submitted, in writing, within 24 hours after you receive notice of the finding.

12) The decision of the Jail Administrator is final with no further appeals allowed. Time limits used in this section do not include weekends, holidays, and any time we are operating under a state of emergency.

13) Staff members make every attempt to follow all deadlines suggested for disciplinary procedures. If staff members are unable to do the necessary work within these deadlines, they document the reasons for such delays, and your disciplinary procedures will continue.

14) The Jail Administrator reviews all reports submitted by the hearing officer(s) to monitor compliance with the jail policies and procedures.

32

## Page 33

- Visiting Procedures
- Food
- Clothing and bedding
- Religious preference

2. If you have a grievance, you may contact your housing unit officer. The housing unit officer contacts the housing sergeant, via the most direct means, and explains the situation. The housing sergeant will determine if you have a complaint or a grievance. If the housing sergeant is unable to resolve the grievance, you will be given the appropriate form to complete (Inmate Grievance Form).

   (a) After an *Inmate Grievance Form* is received and completed, the jail staff member will sign, date and return a copy of the form to the inmate.

Please include the following information on the grievance form:

   - Your name as it is written on your armband.
   - The nature of the grievance.
   - Any witnesses' names and/or anyone who was present at the time the grievance occurred.
   - Any details which help explain the grievance.
   - The way in which you are affected

3. Every effort will be made to investigate your grievance and send a written response back to you within 5 working days (excluding weekends, holidays, and emergencies) stating the outcome and the basis for the outcome.

4. If you disagree with the resolution of the grievance, you may appeal to the Jail Administrator for further investigation by submitting to the Jail Administrator a *Jail Request Form* within 5 days of receiving the decision. The Jail Administrator, or his designee, makes every effort to respond in writing within 5 business days.

5. Jail staff will make every effort to follow the time frames suggested for resolving an inmate grievance. (As used in this section, the time limits mentioned do not include weekends, holidays, or any time we are operating under a state of emergency.) When following the time frames suggested is not possible, staff documents an explanation for the delay and gives you a written copy. Your grievance will continue until it is determined the issue is resolved.

6. Use of the grievance line is for your benefit. If you do not feel your grievance has been handled in an appropriate or timely manner call the number located in your housing unit (989-9899) and leave a detailed message. This line is not to be abused and all disrespectful or inappropriate messages will be disregarded.

### M5. Pod/Direct Supervision Rules

1. You are permitted to be on the upper level walkway only for one of the following reasons:
   a. You are taking a shower.
   b. You are using a telephone
   c. You are walking directly to or from your cell
   d. You are cleaning that area
   e. You are receiving a visit.

33

2. You may take a shower anytime, except from ten (10) minutes before visitation periods, during visiting periods, lockdown and during meals.

3. You may not talk to another inmate who is receiving a visit or attempt to communicate with the visitors.

4. You may not talk or attempt to communicate with another inmate who is in his room, the sub-day room, the professional visiting room, or multi-use room.

5. You are responsible to maintain personal items stored on your shelf and desk in a neat and organized manner.

6. You may watch TV, use the phone and participate in recreation only after the pod/dorm is clean. Outdoor recreation times are at the officer's discretion.

7. You must keep your room door closed at all times.

8. The housing unit officer regulates the TV's volume and channel selection.

9. Shouting and yelling by inmates is prohibited.

10. Mail is passed out Monday through Friday by 8:00 p.m. and picked up throughout the day.

11. You must have the common area clean and orderly prior to and following all meal times.

12. The health care staff visits the pod three (3) times daily, usually between the hours of 5:30 a.m. to 6:30 a.m., 10:00 a.m. to 11:00 a.m. and 4:00 p.m. to 5:00 p.m. You may not approach a health care staff member unless he/she called for you or gave permission for you to do so.

13. You may not approach the commissary vendor unless he/she has called your name or gave permission for you to do so.

14. You will be directed when to retrieve your meal. You may not approach the meal carts until you are called. Then, return to your table to eat. Eating is not permissible in your cell or in any area other than at a table.

15. You may press the red mushroom shaped button located in the pod common area, only when a life/safety situation exists. Misuse of this button is a Serious Rule Violation.

16. You are expected to proceed directly to your cell room if any disturbance/fight occurs in the pod. Failure to do so will result in your being considered a part of the problem.

17. The orange line on the upper level walkway of the pod is a safety warning line. You are to walk between it and the rail, so that you are clear of the door if someone comes out of their cell.

18. Night lockdown time will normally be at 11 p.m., including weekends and holidays.

Call the Public Defender Office free

Between 8:30am to 4:30pm Monday through Friday

937-225-4652

# INDEX

Armbands (Page18)
Bail (Page 4-5)
Bunks (Page 7)
Cell Intercom Call Buttons (Page 11)
Classification (Page 5)
Cleaning (Page 8-9)
Clergy Visits (Page 14)
Commissary (Page 17-18)
Complaint (Page 32)
Contraband (Page 24-25)
Counseling Programs (Page 19)
Counts (Page 24)
Dental (Page 23)
Disciplinary Hearings (Page 30-32)
Education Programs (Page 19)
Emergency (Red) Push Button Use (Page 11)
Fire Safety and Emergency Evacuation (Page 26)
Floor Lines (Page 26)
Grievance Procedure (Page 32)
Grievance Line (Page 33)
Haircuts (Page 17-18)
Housing Unit Schedules (Page 6-7)
Indigent Inmates (Page 16-17)
Intercom Call Buttons (Page 11)
Interpreter Services (Page 19)
Introduction (Page 1)
Jail Management (Page 3)
Jail Issued Items (Page 7)
Laundry Exchange (Page 16)
Legal Counsel (Page 4)
Legal Materials (Page 219)
Legal Visits (Page 14)
Library Services (Page 18-19)
Lockdown and Unlock (Page 24)
Long Distance Phone Calls (Page 12)
Mail, Incoming (Page 10)
Mail, Outgoing (Page 11)
Major (B) Rule Violations (Page 28-29)
Meals (Page 15)
Media Contact (Page 15)
Medical Services and Medications (Page 20-24)
Mental Health (Page 24)
Minor (C) Rule Violations (Page 29-30)
Mission Statement (Page 2)
Money (Page 17)
Movement (Page 25-26)
Parcel Acceptance (Page 10)
Pat Search (Page 26)
Permitted Items (Page 7-8)
Personal Hygiene (Page 16)
Pod/Direct Supervision Rules (Page 33-34)
Pretrial Services (Page 4)
Inmate Behavior (Page 2-3)

Inmate Clothing (Page 9-10)
Inmate Privileges (Page 2)
Inmate Property and Clothing Storage (Page 9)
Inmate Rights (Page 2)
Inmate Worker Program (Page 19)
Public Defender Phone Number (Page 34)
Razors (Page 16)
Recreation (Page 18)
Release Programs (Page 19)
Religious Services (Page 18)
Rules, Violations and Sanctions (Penalties) (Page 27)
Searches (Page 25)
Security Inspections (Page 25)
Serious (A) Rule Violations (Page 27-28)
Sexual Assault, Misconduct or Harassment (Page 26-27)
Smoking Policy (Page 8)
Special Visits (Page 14)
Strip Search (Page 25)
Substance Abuse Programs (Page 19)
Telephone Calls (Page 12-13)
Television (Page 18)
Tylenol (Page 23)
Use of Force (Page 26)
Visitation (Page 13-15)



# Ohio | Department of Rehabilitation & Correction

John R. Kasich, Governor
Gary C. Mohr, Director

Sheriff Phil Plummer
Montgomery County Jail
330 W Second Street
Dayton, OH 45422

RE: 2016 Annual Jail Inspection

Dear Sheriff Phil Plummer:

In accordance with Section 5120.10 of the Ohio Revised Code and Executive Order 92-03 of the Department of Rehabilitation and Correction, the Montgomery County Jail, a full service jail, was inspected on 11/16/2016. The inspection was restricted to assessing compliance with a group of standards, selected from the Standards for Jails in Ohio promulgated by the Department of Rehabilitation and Correction. The group of standards being inspected focused on Reception & Release, Classification, Security, Housing, Sanitation and Environmental Conditions, Communication, Visitation, Medical and Mental Health Services, Food Service, Recreation and Programming, Inmate Discipline, Administrative Segregation, Grievance, Staffing, and Staff Training. The inspection consisted of this Inspector receiving and/or reviewing requested documentation and/or materials, touring selected areas of the jail, and having discussions with various jail staff.

The total actual general housing capacity for the Montgomery County Jail is 805. On the date of the jail inspection, there were 791 inmates incarcerated in the Montgomery County Jail. The Ohio Department of Rehabilitation and Correction recommended housing capacity for the jail is 443, which is based upon total available living space and other requirements. Officials should maintain prisoner counts within the Department's recommended capacity figure.

The Montgomery County Jail (Full Service Jail) is in compliance with the following standards:

5120:1-8-01 (A)(2); -01 (A)(5); -01 (A)(6); -01 (A)(8); -01 (A)(10); -01 (A)(11); -01 (A)(13); -01 (A)(14); -01 (A)(15); -02 (A); -02 (B)(3); -02 (B)(5); -03 (A)(1); -03 (A)(3); -03 (A)(4); -03 (A)(5); -03 (A)(6); -03 (A)(7); -03 (B)(1); -03 (B)(3); -03 (B)(4); -03 (B)(5); -03 (B)(6); -03 (B)(7); -03 (B)(9); -03 (B)(10); -03 (B)(10); -03 (B)(10); -03 (B)(11); -03 (B)(11); -03 (B)(11); -03 (B)(13); -03 (B)(14); -04 (A)(1); -04 (K); -04 (L); -05 (A); -05 (B); -05 (C); -05 (D); -05 (E); -05 (F); -05 (H)(1); -05 (H)(2); -05 (H)(4); -05 (H)(5); -05 (H)(6); -05 (L); -05 (M); -05 (O); -05 (P); -05 (Q); -06 (A); -06 (D); -06 (F); -06 (H); -07 (B); -07 (C); -07 (G); -07 (J); -09 (A); -09 (B); -09 (C); -09 (D); -09 (E); -09 (F); -09 (G); -09 (H); -09 (I); -09 (J); -09 (K); -09 (L); -09 (M); -09 (N); -09 (O); -09 (P); -09 (Q); -09 (R); -09 (S); -09 (T); -09 (U); -09 (V); -09 (W); -09 (X); -09 (Y); -09 (Z); -09 (AA); -10 (A); -10 (B); -10 (C); -10 (E); -10 (F); -10 (G)(1); -10 (G)(2); -11 (C); -11 (D); -12 (A); -12 (D); -12 (E); -12 (I); -15 (A); -15 (C); -15 (F); -16 (B); -17 (A); -17 (B); -17 (C);

The Montgomery County Jail did not comply with the following listed standards. This letter is intended to serve as a basis for developing plans of action for bringing the facility into compliance with the deficiencies noted during the inspection.

5120:1-8-04 (A) (2) Housing Cells: (a) (Important) Seventy square feet for single occupancy forty-eight square feet in jails constructed prior to 1983.

---

Operation Support Center · 770 W. Broad Street · Columbus, Ohio 43222
www.drc.ohio.gov



EXHIBIT

3

Comments: On the day of the inspection, the single, double and quadruple bunked cells were found to lack the required square footage. Jail officials should reduce the population to the Bureau Recommended Capacity.

5120:1-8-04 (A) (2) Housing Cells: (b) (Important) One hundred square feet with seven feet least dimension for double occupancy, stacked bunks, one hundred ten square feet with nine feet least dimension for double occupancy, single bunks.

Comments: On the day of the inspection, the single, double and quadruple bunked cells were found to lack the required square footage. Jail officials should reduce the population to the Bureau Recommended Capacity.

5120:1-8-04 (A) (2) Housing Cells: (d) (Important) One hundred eighty square feet with nine feet least dimension for quadruple occupancy, two stacked bunks, two hundred fifteen square feet with twelve feet least dimension for quadruple occupancy, single bunks.

Comments: On the day of the inspection, the single, double and quadruple bunked cells were found to lack the required square footage. Jail officials should reduce the population to the Bureau Recommended Capacity.

5120:1-8-04 (A) (3) Dormitory Sleeping Space: (a) (Important) Fifty square feet per occupant , except forty-eight square feet in jails constructed prior to 1983, wherein the formula shall be based upon the requirements of paragraph (A)(2)(a) of rule 5120:1-8-04 of the Administrative Code.

Comments: On the day of the inspection, according to the measurements provided by the facility, the dormitory areas were found to lack the required squire footage. Jail officials should reduce the inmate population to the Bureau Recommended Capacity.

5120:1-8-04 (I) (Important) Noise levels shall not exceed seventy decibels in daytime and forty-five decibels at night. Noise levels shall be documented using a sound level meter set to the A-scale (decibels.)

Comments: On the day of the inspection the documentation provided by the jail showed noise levels could only be reduced to fifty decibels (50 db) at night. Jail officials should reduce noise levels so they do not exceed forty-five decibels (45 db) at night.

5120:1-8-05 (G): The jail shall maintain documentation that the following standards are met with regard to interior lighting: G3): (Important) Lighting in inmate sleeping areas shall be reducible to between two and four foot-candles, measured thirty inches above the floor.

Comments: On the day of the inspection the documentation provided by the jail showed lighting levels during night time hours were being reduced below two (2) foot-candles in the sleeping areas. Jail officials should keep lighting in inmate sleeping areas reduced to between two and four foot-candles, measured thirty inches above the floor.

The Montgomery County Jail is in compliance with 100% of the Essential Standards and at least 90% of the Important Standards meeting the requirements of a "Compliant Jail". It should be noted however; the jail did not comply with 6 of the Important Standards upon which the facility was inspected. This letter is intended to serve as a basis for developing plans of action for bringing the facility back into compliance with the remaining deficiencies noted during the inspection.

The Bureau of Adult Detention encourages the jail to correct the remaining deficiencies noted in the inspection report prior to the next annual jail inspection. Plan of Action forms are enclosed and can be submitted through the Ohio Jail Management System (OHJMS) at www.OHJMS.Intelligrants.com. Feel free to contact the Bureau if you need assistance or clarification in this effort. The Bureau remains available to discuss the aspects of this report and to provide reference materials or assistance as desired.

Sincerely,

Stephen Holland, State Jail Inspector
Bureau of Adult Detention
1580 St Rt 56
London, Ohio 43140
Phone: (614) 981-2040
Email: stephen.holland@odrc.state.oh.us

# Hon. Steven K. Dankof

| | |
|---|---|
| **From:** | cjis@mcohio.org |
| **Sent:** | Monday, July 2, 2018 8:21 AM |
| **To:** | Hon. Dennis J. Adkins; josephr@mcohio.org; carl.henderson@daytonohio.gov; check@vandaliaohio.org; christopher.roberts@daytonohio.gov; Chuck Crosby; Hon. Steven K. Dankof; James Dare; deirdre.logan@daytonohio.gov; Judy Dodge; Dan Foley; frederick.dressel@ketteringoh.org; Hon. Barbara P. Gorman; Matt Haines; James A. Hensley; Kim Holbrook; Jim Long; katie.mendez@daytonohio.gov; Hon. Michael W. Krumholtz; Hon. Dennis J. Langer; langosb@mcohiosheriff.org; Debbie Lieberman; Mary Kay Stirling; Mia Wortham Spells; Timothy Nolan; James D. Piergies; Phil Plummer; quinn@oakwood.oh.us; richard.biehl@cityofdayton.org; Adele Riley; robert.rettich@cityofmiamisburg.com; Judy Sealey; Hon. Gregory F. Singer; sonya.eggleton@daytonohio.gov; Stephanie.Cook@daytonohio.gov; Rob Streck; Greg Sunshein; John Theobald; Michael Tucker; parksj@mcohio.org; Joseph Tuss; Jim Vangrov; Hon. Mary Wiseman; Uchenna Youngblood; Mark Willis; Julie Stephens |
| **Cc:** | Joe Spitler; Bart Kincaid |
| **Subject:** | JusticeWeb: MONT-JAIL Population By Court and Primary Charge |
| **Attachments:** | Jail Population By Court and Primary Charge Degree.pdf |

There are currently 862 inmates. Please see attachment for breakdown by court and primary charge degree.



| | |
|---|---|
| **From:** | cjis@mcohio.org |
| **Sent:** | Tuesday, July 3, 2018 8:20 AM |
| **To:** | Hon. Dennis J. Adkins; josephr@mcohio.org; carl.henderson@daytonohio.gov; check@vandaliaohio.org; christopher.roberts@daytonohio.gov; Chuck Crosby; Hon. Steven K. Dankof; James Dare; deirdre.logan@daytonohio.gov; Judy Dodge; Dan Foley; frederick.dressel@ketteringoh.org; Hon. Barbara P. Gorman; Matt Haines; James A. Hensley; Kim Holbrook; Jim Long; katie.mendez@daytonohio.gov; Hon. Michael W. Krumholtz; Hon. Dennis J. Langer; langosb@mcohiosheriff.org; Debbie Lieberman; Mary Kay Stirling; Mia Wortham Spells; Timothy Nolan; James D. Piergies; Phil Plummer; quinn@oakwood.oh.us; richard.biehl@cityofdayton.org; Adele Riley; robert.rettich@cityofmiamisburg.com; Judy Sealey; Hon. Gregory F. Singer; sonya.eggleton@daytonohio.gov; Stephanie.Cook@daytonohio.gov; Rob Streck; Greg Sunshein; John Theobald; Michael Tucker; parksj@mcohio.org; Joseph Tuss; Jim Vangrov; Hon. Mary Wiseman; Uchenna Youngblood; Mark Willis; Julie Stephens |
| **Cc:** | Joe Spitler; Bart Kincaid |
| **Subject:** | JusticeWeb: MONT-JAIL Population By Court and Primary Charge |
| **Attachments:** | Jail Population By Court and Primary Charge Degree.pdf |

There are currently 826 inmates. Please see attachment for breakdown by court and primary charge degree.

EXHIBIT
5

## Hon. Steven K. Dankof

| | |
|---|---|
| **From:** | cjis@mcohio.org |
| **Sent:** | Wednesday, July 4, 2018 8:20 AM |
| **To:** | Hon. Dennis J. Adkins; josephr@mcohio.org; carl.henderson@daytonohio.gov; check@vandaliaohio.org; christopher.roberts@daytonohio.gov; Chuck Crosby; Hon. Steven K. Dankof; James Dare; deirdre.logan@daytonohio.gov; Judy Dodge; Dan Foley; frederick.dressel@ketteringoh.org; Hon. Barbara P. Gorman; Matt Haines; James A. Hensley; Kim Holbrook; Jim Long; katie.mendez@daytonohio.gov; Hon. Michael W. Krumholtz; Hon. Dennis J. Langer; langosb@mcohiosheriff.org; Debbie Lieberman; Mary Kay Stirling; Mia Wortham Spells; Timothy Nolan; James D. Piergies; Phil Plummer; quinn@oakwood.oh.us; richard.biehl@cityofdayton.org; Adele Riley; robert.rettich@cityofmiamisburg.com; Judy Sealey; Hon. Gregory F. Singer; sonya.eggleton@daytonohio.gov; Stephanie.Cook@daytonohio.gov; Rob Streck; Greg Sunshein; John Theobald; Michael Tucker; parksj@mcohio.org; Joseph Tuss; Jim Vangrov; Hon. Mary Wiseman; Uchenna Youngblood; Mark Willis; Julie Stephens |
| **Cc:** | Joe Spitler; Bart Kincaid |
| **Subject:** | JusticeWeb: MONT-JAIL Population By Court and Primary Charge |
| **Attachments:** | Jail Population By Court and Primary Charge Degree.pdf |

There are currently 813 inmates. Please see attachment for breakdown by court and primary charge degree.



**Hon. Steven K. Dankof**

| | |
|---|---|
| **From:** | cjis@mcohio.org |
| **Sent:** | Thursday, July 5, 2018 8:20 AM |
| **To:** | Hon. Dennis J. Adkins; josephr@mcohio.org; carl.henderson@daytonohio.gov; check@vandaliaohio.org; christopher.roberts@daytonohio.gov; Chuck Crosby; Hon. Steven K. Dankof; James Dare; deirdre.logan@daytonohio.gov; Judy Dodge; Dan Foley; frederick.dressel@ketteringoh.org; Hon. Barbara P. Gorman; Matt Haines; James A. Hensley; Kim Holbrook; Jim Long; katie.mendez@daytonohio.gov; Hon. Michael W. Krumholtz; Hon. Dennis J. Langer; langosb@mcohiosheriff.org; Debbie Lieberman; Mary Kay Stirling; Mia Wortham Spells; Timothy Nolan; James D. Piergies; Phil Plummer; quinn@oakwood.oh.us; richard.biehl@cityofdayton.org; Adele Riley; robert.rettich@cityofmiamisburg.com; Judy Sealey; Hon. Gregory F. Singer; sonya.eggleton@daytonohio.gov; Stephanie.Cook@daytonohio.gov; Rob Streck; Greg Sunshein; John Theobald; Michael Tucker; parksj@mcohio.org; Joseph Tuss; Jim Vangrov; Hon. Mary Wiseman; Uchenna Youngblood; Mark Willis; Julie Stephens |
| **Cc:** | Joe Spitler; Bart Kincaid |
| **Subject:** | JusticeWeb: MONT-JAIL Population By Court and Primary Charge |
| **Attachments:** | Jail Population By Court and Primary Charge Degree.pdf |

There are currently 845 inmates. Please see attachment for breakdown by court and primary charge degree.



EXHIBIT

7

# County jail told to fix serious staffing, overcrowding issues

## Montgomery County site's high turnover also contributes to concern.

**By Bailey Gallion Staff Writer**

ONLY IN THE DAYTON DAILY NEWS



Independent consultants described serious staffing problems at the Montgomery County Jail to an advisory group Tuesday.

Brad Sassatelii and George Vose, consultants from CGL Companies, based their findings on interviews with staff, a tour of the facilities and jail records. The Montgomery County Jail Justice Advisory Committee, which was formed in March 2017 in response to several civil rights lawsuits, hired the consultants to find ways to prevent future mistreatment claims.

At the same time that funding and staffing at the jail have decreased, populations have increased, members of the committee said. The jail now operates at a higher capacity than it was built to house. Pods designed to house 48 inmates now house 104. Areas designated for activities have been converted to housing, the consultants said.

The layout of the jail makes it difficult for officers to properly supervise the inmates, Sassatelii and Vose said in their presentation. The jail is made up of "a maze of walk throughs" with narrow hallways and sudden turns where inmates could surprise officers.

"It's one of the few areas I've been in, out of hundreds of jails and prisons I've been in over the years, where I felt unsafe," Sassatelii said.

Some cells are arranged in a linear format, limiting the visibility of inmates to officers.

Only one officer supervises each floor of inmates, and each floor houses 80 to 90 inmates.

"Think about that," Vose said. "That's 80 to 90 inmates that you can't see."

Another concern was the location of the mental health cells. Inmates on suicide watch are housed in the booking area, so already busy booking officers must check the inmates every 10 minutes.

Turnover rate of employees at the jail is 30 percent per year, Montgomery County Sheriff's Office Chief Deputy Bob Streck said. The sheriff's department is struggling to recruit correctional officers to fill positions. Years ago, 100 people would show up to take the exam required for tire position, Streck said. Now the department might see four applicants.

An average corrections officer is working overtime every two to three days, Sassatelli said. Streck said overtime hours are assigned according to seniority, so the bulk of the jail's overtime hours are worked by the youngest officers. That overwhelms new employees, leading to turnover. In employee interviews, overtime was the "number one concern" for younger officers.

"That's kind of unusual from my standpoint," Sassatelli said "Usually the younger guys are the ones that want the overtime, but here they're worn out by it already. It's taking a significant toll."

In the event of an emergency, the jail can work an officer up to eight hours beyond the scheduled end of shift. Officers must work overtime if ordered to and can be disciplined if they don't, Major Matt Haines said.

Staffing is low enough that housing units are sometimes locked down for short periods of time because officers aren't available to supervise the inmates. In order for the officer supervising a unit to use the bathroom, the officer must sometimes lock down the unit and leave.

The consultants said the jail doesn't staff enough supervisors for the number of

inmates and officers. The 900-bed facility often has a single sergeant on duty.

Several jail locations are monitored only by security cameras. Officers are not posted at the medical unit where healthcare contractors treat inmates. Some female staffers are concerned that they are alone with inmates in the same area as safety hazards such as dental tools, Sassatelli said.

Officers also do not supervise the loading dock, the laundry room or the kitchen in person, the consultants said. Contraband could be passed through those locations.

Vose and Sassetteli recommended several staffing increases, including the addition of more command staff and booking staff and adding posts to supervise the medical unit, loading dock and other areas.

It's not clear whether the jail can find funding for the additional staffing. Streck said the jail already has seven unfunded positions.

Yvonne Curington, a member of the League of Women Voters who has been attending the advisory committee's meetings for months, said the presentation by the consultants was "heartening" but criticized the pace of the committee's work. She noted that it took the committee three months to decide to hire the consultants.

"People's rights are being violated," she said. "This group has moved awfully slow." Contact this reporter at bailey.gallion@coxinc.com.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

LARRY NMI WATSON,                    :       CASE NO. C-3-89-036
                                             (Judge Walter H. Rice)
          Plaintiff,                 :

     -v-                             :       FINAL CONSENT DECREE

GARY R. HAINES, SHERIFF, et al.,     :

          Defendants.                :

## PREAMBLE

The above-entitled action was brought by Plaintiff, Larry Watson, on behalf of himself and all other persons similarly situated, and evolved into a class action proceeding under Rule 23 of the Federal Rules of Civil Procedure, and consolidated with similar actions pursuant to the Court's direction.

Plaintiff's Complaint herein, as amended, charged in essence that inmates of the Montgomery County Combined Jail were being confined under conditions which violated the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution in violation of Section 1983 of Title 42 of the United States Code, and in violation of the Ohio State Constitution.

In this action, Plaintiff requests injunctive relief and compensatory damages sufficient to redress the constitutional violations alleged. Plaintiff also prays for reimbursement of his costs and for the allowance of attorney fees for prosecuting this action.

The named Defendants have appeared and answered and have denied the material allegations of the Plaintiff's Complaint.

EXHIBIT

9

The Court, pursuant to a Temporary Restraining Order, ruled that Defendants must operate the Montgomery County Combined Jail with a maximum inmate capacity of 361 inmates. More specifically, the Montgomery County Combined Jail was ordered to maintain a maximum inmate population of 262 inmates in the Montgomery County Jail component and a maximum inmate population of 99 inmates in the City Annex component of the Combined Jail.

The Court, by Order dated February 17, 1989, determined that this action is properly maintainable as a class action under the provisions of Rule 23 of the Federal Rules of Civil Procedure.

In order to bring to rest the controversy between the class represented by Plaintiff, and Defendants; to secure total and final settlement of all claims against Defendants arising out of the purported acts and omissions set forth in Plaintiff's Complaint, as amended; and to avoid further expense, inconvenience, and the distraction and hazard of burdensome and protracted litigation; the parties desire to settle, compromise, and terminate this action and all claims asserted therein, as well as any and all claims against the Defendants which are based upon or might be based upon or arise from any of the matters alleged in Plaintiff's Complaint, as amended, regardless of the legal theory on which such claims may be based.

I.   MAXIMUM INMATE POPULATION

The inmate population that is utilizing permanent beds shall not exceed a total combined jail population of 361 inmates, except as Defendants may construct additions to the facility. Those transient inmates in holding cells shall not be considered

utilizing permanent beds. The County Jail component of the Combined Jail shall not house an inmate population (utilizing permanent beds) in excess of 262 inmates. The City Annex component of the Combined Jail shall not house an inmate population (utilizing permanent beds) in excess of 99 inmates.

## II. EMERGENCY OVERCROWDING RELEASE MECHANISM

The maximum population limitation set forth in Section I. (Maximum Inmate Population) shall be maintained according to the following priority release mechanism.

1. All unsentenced non-violent misdemeanants confined in the jail or brought to the jail by any arresting or confining agency shall be released on their own recognizance and issued a "Summons after Arrest" to the appropriate court on the appropriate court date.

2. Inmates confined for conviction of non-violent misdemeanor offenses, other than those serving mandatory sentences for DWI/DUI convictions, who have completed at least fifty percent (50%) of their sentences shall be released with priority given to those with the fewest days remaining to be served.

3. Inmates confined for conviction of DWI/DUI, who have completed at least fifty percent (50%) of their sentences shall be released with priority given to those with the fewest days remaining to be served.

4. Inmates confined for convictions of non-violent misdemeanor offenses, DWI/DUI convictions who have not completed fifty percent (50%) of their sentences shall be released in the order established above.

5. Inmates confined for convictions of non-violent felony offenses, who have completed at least fifty percent (50%) of their sentences shall be released with priority given to those with the fewest days remaining to be served.

6. Inmates confined for convictions of non-violent felony offenses who have not completed fifty percent (50%) of their sentences shall be released in the order established above.

7. Inmates confined for technical parole, probation or furlough violations who have no other pending criminal

charges and who have been confined for at least thirty
(30) days shall be released.

8. All unsentenced non-violent felons confined in the
jail or brought to the jail by any arresting or
confining agency shall be released on their own
recognizance.

In the event that the above steps do not reduce the inmate
population to appropriate levels either in the entire jail
population or within specific classifications or specific jail
areas, the Jail Administrator or Sheriff may authorize release of
such other inmates, not included in the above-listed priorities,
to accomplish such required population levels.

Prior to the release of any inmates in a felony status,
permission must be secured from the Sheriff, the Jail
Administrator or the tracking officer.

In the event the general population remains below 361, but a
specific classification or group of inmates within the population
reaches a level that precludes appropriate housing, the release
mechanism may be implemented if necessary until an adequate
number of beds can be allocated or reclassified to appropriately
accommodate inmates affected in those classifications or groups.

Overflow housing will only be permitted in the event of an
emergency which must be documented and approved by the Sheriff or
Jail Administrator. Overflow housing will be permitted in the
basement bullpen for a maximum of seventy-two (72) hours and will
not exceed twelve (12) inmates at any one time. Inmates so
housed will be moved into the population of the jail as soon as
space is available, as a first priority, before the moving of any
other inmates into housing units. An "Emergency" is defined for

4

purposes of this Consent Decree as those occasions when a mass arrest occurs such as a drug sweep, riot, demonstration or large-scale criminal disturbance. Defendants represent that they will attempt to remedy said emergency no later than seventy-two (72) hours.

Jail supervisors have the discretion to refuse to release any inmate who may present a danger to himself or others or may be under the influence of alcohol or drugs. Based upon recommendations of medical or mental health services professionals, jail supervisors may refuse to release any inmate with an apparent mental health disorder or serious contagious disease.

All persons released shall have a CCH/III check made. The Sheriff or Jail Administrator or the tracking officer shall decide if the inmate presents a danger to the community. Variance to the procedure may be given by the Sheriff, the Jail Administrator or the Sheriff's designee.

The priority listing of the emergency overcrowding release mechanism can be altered by the Sheriff should he deem such change necessary and in the best interests of jail operations and community safety and well-being.

The electronic home detention program more fully set forth in Section III of this Consent Decree may be injected into any phase of the priority release mechanism. This decision shall rest with the Sheriff, Jail Administrator, tracking officer or designee.

This Consent Decree does not hinder nor limit, in any way, the Montgomery County Court's powers to implement a pre-trial release program in Montgomery County.

### III. ELECTRONIC HOME DETENTION PROGRAM

The Defendants shall implement an electronic home detention program for the purpose of assisting in the reduction of jail population levels. The Sheriff and Jail Administrator shall develop eligibility criteria and an operational policy for said electronic home detention program.

### IV. INTERIM JAIL FACILITY

Defendants represent to this Court that they are planning the construction of an emergency interim holding facility to be located on the grounds of the Dayton Human Rehabilitation Center or other suitable site. Defendants will utilize a fast-track planning approval process provided by the Ohio Bureau of Adult Detention Facilities and Services to construct a modular unit style detention facility.

### V. NEW JAIL CONSTRUCTION

Defendants represent to this Court that they are planning the renovation and construction of the Montgomery County Combined Jail so as to provide additional housing, programming and staff. Defendants have selected and hired an architect who will provide construction plans and assistance in the implementation of this project. Defendants shall finance a study to aid in the determination of the estimated number of beds that will be needed in the new jail facility so that the architect can submit his jail plans accordingly.

The construction and renovation of the new jail shall meet the construction and renovation criteria for full service local adult detention facilities set forth by the Ohio Department of Rehabilitation and Correction so as to comply with Section 5103.18 of the Ohio Revised Code, the Minimum Standards for Jails in Ohio, and with established Bureau of Adult Detention Facilities and Services procedures.

Nothing in this Consent Decree shall be interpreted as prohibiting Defendants from contracting with other detention facilities for housing of Montgomery County inmates.

VI.  MEDICAL CARE

Defendants represent that the Montgomery County Combined Jail has received full accreditation from the National Commission of Correctional Health Care.  Furthermore, Defendants shall comply with Regulation 5120:1-8-09 of the Ohio Minimum Standards for Full Service Facilities, addressing jail medical standards and practices.

The health care staff shall include a responsible physician who will be available twenty-four (24) hours per day, seven (7) days per week for consultation.  In addition, the physician shall hold sick call one (1) night per week at the jail.  When the responsible physician is not available, an associate of the physician will be available.

The health care staff shall include a dentist who will see inmate patients one (1) day each week.  In addition, emergency dental care will be available at the dental clinic of a community hospital or similar institution.

7

Mental health counselors will be available for on-site jail service.

The jail shall employ seven (7) full-time paramedics, one (1) such paramedic designated as the health services administrator. Sick call will be provided seven (7) days per week by the allied medical personnel. Defendants represent that these paramedics have EMT "A" training plus seven hundred (700) hours and have State of Ohio paramedic certification. The paramedics have advance life support certification and are CPR certified instructors. Paramedic coverage shall be twenty-four (24) hours, seven (7) days a week.

Upon arrival at the jail, inmates shall be screened for medical or mental problems. If suicidal, on medication or returning from the hospital, or exhibiting medical or mental problems, a paramedic will be called to the receiving area. The mental health counselor may also be called in the post screening process. At screening, the inmate will be informed of the access to health service process through a statement read to him/her; later a "prisoner handbook" will issue.

Follow-up health assessments shall be completed by the paramedic which shall include a medical history and a health appraisal.

Specialty clinic referrals shall be made available, including OB, GYN, STD, dental, TB, prenatal, and abortion counseling (when requested). Emergency services, off site, shall be provided when necessary.

The physician shall review all charts where the paramedic has provided service or the patient has received medication. In addition, for quality assurance, the physician shall have another physician review ten (10) charts at random, each quarter.

Defendants shall continue their efforts in quality medical care to insure that inmates are provided constitutionally sufficient medical services while incarcerated at the Montgomery County Combined Jail.

VII. <u>INMATE RECREATION AND EXERCISE</u>

Defendants shall maintain an ongoing recreation program which shall provide at least five (5) hours of physical exercise for each inmate per week. This program shall include outdoor recreation when weather permits, consisting at least of basketball, frisbee, horseshoes and exercises. Indoor recreation shall be provided a minimum of five (5) hours per week for each inmate during times when outdoor facilities are not usable and shall consist of, among other activities, ping-pong, aerobics, Solaflex, shuffleboard. The above activities shall be restricted to those inmates who are physically able and desire this type of recreation, including those inmates who are administratively segregated unless they present a security problem to be determined on an individual basis.

Inmates who do not wish active participation in the activities mentioned hereinabove shall be permitted access to the recreation areas for passive recreational activities. Passive recreational activities include, but are not limited to reading, television, table games.

9

VIII. <u>FOOD SERVICE</u>

Defendants will provide three (3) meals per day to all inmates. The food service supervisor will plan menus at least thirty (30) days in advance of service. All menus will be reviewed by a dietician, as selected by the food service supervisor, for variety and nutritional value.

A written approval of the jail menus will be made by the dietician and filed by the food service supervisor to become a permanent part of food service records.

Defendants shall allow the Montgomery County Health District to conduct an inspection of the food service program at any time. The food service supervisor will make a written request to the County Health Board of Health at least once yearly, requesting that the food service operation be inspected.

Special diets will be provided to those inmates who qualify based upon particular medical or religious needs. Inmates requesting special or modified diets, due to medical problems, will be referred to the medical staff to determine if a valid medical need exists. Inmates requesting special or modified diets due to religious convictions, will have their requests forwarded to the Jail Administrator to determine the validity of the demand.

IX. <u>LIBRARY FACILITIES</u>

Defendants will continue to provide the books requested by Plaintiff and which are presently in place, as agreed upon between the parties to this litigation, updating them on an annual basis. Nothing in this decree shall bind the Defendants

to guarantee that the books remain intact; their obligation is solely to provide them for the use of the jail inmates, as they have agreed to do during the course of this litigation.

X.    COMPLIANCE IN REPORTING

The Court hereby continues the appointment of Lawrence J. Greger as legal counsel for the Plaintiff class for the purpose of reviewing the Defendants' compliance with the Order.  Subject to further order of the Court, this appointment shall continue until six (6) months after the opening of the renovated/constructed Montgomery County Combined Jail.

Plaintiff's counsel hereby agrees to monitor the Montgomery County Combined Jail on a limited basis with inspections of not more than twice a month unless Plaintiff's counsel can demonstrate legitimate problems which require additional time for investigation.  Plaintiff's counsel shall make said inspections on the second and fourth Fridays of a given month.  Plaintiff's counsel shall charge no more than the court's previously ordered hourly fee for such monitoring, and hereby agrees to use legal assistance, when available, at a reduced hourly rate.

Six (6) months after the filing date of this Consent Decree and every six (6) months thereafter, Plaintiff's counsel shall submit to the Court a written report of Defendants' compliance or non-compliance with the individual sections of the Order.  A final report shall be submitted when monitoring terminates, six (6) months after the opening of the renovated Montgomery County Combined Jail.

If Plaintiff's counsel discovers any area where Defendants have failed to comply with the provisions of this Order, or the implementation does not meet the intent of the Order or constitutional standards, he shall direct a letter of said findings to defense counsel. The parties are directed to attempt resolution of any subsequent disagreements with regard to the interpretation of or compliance with this Order, by negotiating without further intervention of the Court. Except in case of emergency, the Court shall not entertain an application for relief without certification by counsel seeking relief that a good faith attempt has been made to resolve the controverted issue which sets forth such attempts in detail.

XI. LIMITATIONS

Nothing incident or relating to this Consent Decree or any provision hereof, including but not limited to negotiations and public announcements, may be used by any party against any other party in this action or in any other action, except to enforce the rights and obligations of the respective parties arising out of the provisions of this Consent Decree.

This Consent Decree is not, and shall not be construed to be either an admission by Defendants of the validity of any of the claims asserted in this action, or the liability for any claim thereof, or of any wrongdoing whatsoever, or address any individual claims for damages, nor shall the Consent Decree be construed as an admission by Plaintiff of any lack of merit in his or his class' allegations. Any statements or arguments made on behalf of any class member or Defendant or in support of the

Consent Decree shall not be used as evidence in any way in any subsequent trial, proceeding, or hearing either in this action or in any other action or proceeding between the parties thereto, should such occur.

It is recognized that some obligations of the Defendants may be in excess of those constitutionally required, and therefore, if any provision herein agreed to becomes unreasonably burdensome, either party may petition, with notice to the other party, the Court to amend the Consent Decree.

XII. <u>TERMINATION</u>

The Court hereby retains jurisdiction over this action to implement and enforce the provisions and purposes of this Order, until six (6) months following the opening of the renovated/constructed jail.

IT IS SO ORDERED:

_____
WALTER H. RICE
UNITED STATES DISTRICT
JUDGE

APPROVED:

FOR THE DEFENDANTS                      FOR THE PLAINTIFF

LEE C. FALKE, MONTGOMERY COUNTY
PROSECUTING ATTORNEY

BY:_____          _____
CHRIS R. VAN SCHAIK                 LAWRENCE J. GREGER
Assistant Prosecuting Attorney      Greger and Ovington
41 N. Perry Street, Suite 300       634 Hulman Building
Dayton, Ohio 45402                  120 West Second Street
Telephone: (513) 225-5757           Dayton, Ohio 45402
                                    Telephone: (513) 223-3153

BY: _Maureen C Newkold_
     MAUREEN C. NEWKOLD
     Assistant Prosecuting Attorney
     41 N. Perry Street, Suite 300
     Dayton, Ohio 45402
     Telephone: (513) 225-5757

_____
GARY HAINES
Montgomery County Sheriff
41 N. Perry Street
Dayton, Ohio 45402

_____
PAULA J. MACILWAINE
Montgomery County Commissioner
Montgomery County Administration Building
451 West Third Street
Dayton, Ohio 45422

_____
DONNA B. MOON
Montgomery County Commissioner
Montgomery County Administration Building
451 West Third Street
Dayton, Ohio 45422

_____
CHARLES J. CURRAN
Montgomery County Commissioner
Montgomery County Administration Building
451 West Third Street
Dayton, Ohio 45422

_____
JAMES W. OLIN
Jail Administrator
Montgomery County Sheriff's Office
41 N. Perry Street
Dayton, Ohio 45402